**GREAT AMERICAN INDEMNITY COMPANY, Appellant,**

v.

**Ed MEYER, Appellee.**

No. 12752.

Court of Civil Appeals of Texas.

Galveston.

Dec. 8, 1955.

Rehearing Denied Jan. 5, 1956.

Kemper & Kemper and Vincent W. Rehmet, Houston, for appellant.

Talbert & Giessel and Scott Talbert, Houston, for appellee.

CODY, Justice.

On October 7, 1954, this Court reversed the judgment of the trial court in the above numbered and styled cause in certain respects, as appears from our opinion reported in 272 S.W.2d 569. Thereafter the Supreme Court reversed certain of our holdings which had reversed certain of the trial court's holdings, and then remanded the case to our Court to pass on certain of appellant's points not theretofore passed on by this Court, as appears from the Supreme Court's opinion reported in 279 S.W.2d 575.

The points in question which this Court did not pass on were points of appellant which charged that the findings of the jury in answer to certain special issues were against the great weight and preponderance of the evidence. The said points and the special issues to which they severally relate were as follows:

Seventh Point

"The error of the trial court in refusing to grant a new trial because the answer of the jury to Special Issue No. 5 is so contrary to and against the greater weight and overwhelming preponderance of the evidence as to be manifestly and clearly wrong." Special Issue to which same relates:

Special Issue No. 5.

"Do you find from a preponderance of the evidence that Plaintiff has sustained, or will sustain, any partial loss of use of his right leg below the knee, if any you have found." to which the jury answered: "We do."

Eighth Point

"The error of the trial court in refusing to grant a new trial because the answer of the jury to Special Issue No. 6 is so contrary to and against the greater weight and overwhelming preponderance of the evidence as to be manifestly and clearly wrong." Special issue to which same relates:

Special Issue No. 6.

"What do you find from a preponderance of the evidence to be the beginning date, if any, of such partial loss of use of Plaintiff's right leg below the knee, if any you have found?" to which the jury answered: "January 16, 1953."

Ninth Point

"The error of the trial court in refusing to grant a new trial because the answer or

the jury to Special Issue No. 7 is so contrary to and against the greater weight and overwhelming preponderance of the evidence as to be manifestly and clearly wrong." Special Issue to which same relates:

Special Issue No. 7.

"Do you find from a preponderance of the evidence that such partial loss of use of Plaintiff's right leg below the knee, if any, is or will be permanent or temporary?" to which the jury answered: "Permanent."

Tenth Point

"The error of the trial court in refusing to grant a new trial because the answer of the jury to Special Issue No. 9 is so contrary to and against the greater weight and overwhelming preponderance of the evidence as to be manifestly and clearly wrong." Special Issue to which same relates:

Special Issue No. 9.

"What do you find from a preponderance of the evidence to be the percentage, if any, of such partial loss of use of Plaintiff's right leg below the knee, if any you have found." to which the jury answered: "Seventy Five Per Cent."

■ We overrule appellant's aforesaid points. The evidence in this case showed that the injury to appellee's big toe, on his right foot, was in and of itself insignificant. But the injury failed to respond to treatment, and gangrene set in. This indicated that, unknown to him, appellee was a diabetic. To heal the gangrene—perhaps to save appellee's life—it was necessary to perform a sympathectomy. This operation increased the blood supply in the appellee's right leg and thereby reduced the gangrene. However, said operation had the effect of creating an imbalance in the circulation in appellee's leg,—the blood supply to the left leg was diminished, and the left leg was noticeably less warm than the right leg where the blood supply had been increased. The disability suffered by appellee resulted from this imbalance of the circulation of blood in his legs. Appellee's evidence was to the effect that since his injury he had been unable to work except for a few weeks and then could work only at lighter jobs than he had held before his injury, and he was laid off of these lighter jobs and not called back for work. The immediate cause of appellee's incapacity was that when he walked as much as a half block, a pain developed in the calf of his right leg, and then his weakness or disability extended all the way up the leg. Appellee's doctor accounted for this condition by stating that the calf muscles are the most active muscles of the leg and so require the most blood supply, and so feel the shortage of blood before the high up muscles feel it. It is this shortage of blood that causes the pain and consequent weakness and incapacity. We confess that it is difficult for a layman to understand why appellee's disability did not develop in his left leg where the blood supply is less rather than in the right leg where the blood supply is greater. However, laymen are not qualified to reason on medical matters. See Bowles v. Bourdon, Tex., 219 S.W.2d 779. The jury were authorized therefore to accept as much of appellee's medical evidence as seemed to them worthy of credit and we cannot reject their acceptance of such evidence. The appellee's medical testimony was to the effect that appellee's disability in his upper leg is permanent and is 50% incapacity, and that his disability in his lower leg—which, for purposes of the compensation law, is treated as his foot—is 100% permanent.

However, the jury found that the disability in appellee's upper leg is 25% and in his lower leg is 75%. Not only was the evidence sufficient to justify the jury's finding, but appellant is in no position to question the sufficiency since it caused appellee to be examined by a specialist and failed to place its said doctor on the stand to testify.

■ As indicated above, the jury found 25% partial permanent incapacity to appellee's upper leg. On the original submission of the appeal in this Court, appellee urged a cross-point complaining that the trial court did not allow appellee compensation

for the loss of the use of his leg above the knee. In our original opinion we held [272 S.W.2d 572], "Should the evidence on a new trial show that the injury extended to the right leg below the knee and to the right leg above the knee, the proper formula for allowing benefits in such case is to be gathered from the following cases: Lumbermen's Mutual Casualty Company v. Zinn, Tex.Civ.App., 220 S.W.2d 906, writ refused; Godwin v. Texas Employers Insurance Ass'n, 145 Tex. 100, 195 S.W.2d 347."

The Supreme Court's jurisdiction was not invoked to pass upon the correctness of our quoted ruling. And appellant here questions our jurisdiction to pass on appellee's cross-point because the case was tried to a jury and there was no motion for a new trial by appellee making any complaint; however the trial court rejected the jury's finding relative to appellee's incapacity in his right leg above the knee, and entered a verdict notwithstanding said jury's finding. That we have jurisdiction in such case has been held in Smock v. Fischel, 146 Tex. 397, 207 S.W.2d 891, and American General Ins. Co. v. Beare, Tex. Civ.App., 225 S.W.2d 454. (There appears to be no writ history in this latter case which was by this Court.) In this last cited case the ruling was based on Rule 324, T.R.C.P. Though the Rule has since been changed to some extent, it still provides that where a litigant has been deprived of judgment based on a motion to disregard a finding by the jury, the party aggrieved thereby can complain on appeal without having first complained in a motion for a new trial.

■ Coming now to ruling upon our direction to the trial court as to the proper formula for allowing benefits in such a case as the present one, it will be noted that Section 12 of Article 8306, V.A.T.S., provides, "For the loss of a foot, sixty per cent of the average weekly wages during one hundred and twenty-five weeks" and provides compensation, "For the loss of a leg at or above the knee, sixty per cent of the average weekly wages during two hundred weeks." In passing it may be noted that both sides agree that for purposes of workmen's compensation the leg below the knee is a "foot." Said Section further provides, "Where the employé sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; *but this section shall not affect liability· for the concurrent loss or the loss of the use thereof of more than one member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent."* (Emphasis ours.) This last quoted part of said section was discussed by the Supreme Court in Texas Employers Insurance Association v. Patterson, 144 Tex. 573, 192 S.W.2d 255, but the facts in that case are distinguishable from the facts in this case. In this case according to the evidence and the jury finding there was a concurrent loss of the use of the "foot" and also of the leg above the knee. According to our interpretation of the quoted Section and of Lumbermen's Mutual Casualty Co. v. Zinn, supra, and Godwin v. Texas Employers Insurance Ass'n, supra, as applied to the facts of this case, the court should have allowed, as it did, 125 weeks for disability to the foot calculated at 75% disability, and should allow 75 weeks (being 200 weeks for the leg less 125 weeks previously allowed for the foot) at 25% disability.

The trial court's Clerk is in a better position to figure out the correction under the formula stated than is our Clerk and the case is remanded to the District Court for that court to cause its judgment to be corrected only in respect to allowing, in addition to what has heretofore been allowed, 75 weeks at 25% disability, the same being 200 weeks for the leg less 125 weeks previously allowed for the foot.

Cause remanded to the District Court with instructions.

GANNON, J., not sitting.