Waites **BOGANY**, Appellant,

v.

**CONSOLIDATED UNDERWRITERS,**
Appellee.

No. 16650.

United States Court of Appeals
Fifth Circuit.

Feb. 26, 1958.

Jim S. Phelps, Houston, Tex., for appellant.

Wyatt H. Heard, Houston, Tex., Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

JONES, Circuit Judge.

Waites Bogany was a log tripper employed by a lumber company. He became entangled in a machine into which his right hand and arm were pulled. The arm was so mangled as to require amputation above the elbow. This entitled him to a workmen's compensation award for the specific injury of the loss of the arm. He claimed to be entitled to an additional award for injuries to his shoulder and neck and for general disability. The insurance carrier for the employer which was the defendant in the district court and is the appellee here, asserted that the shoulder and neck condition was arthritis unconnected with the injury, or resulted from atrophy caused by disuse of his arm and shoulder muscles, or was only an incident to and encompassed within the specific injury of the loss of the arm. The testimony was without conflict that the appellant Bogany had an arthritic condition in his neck and shoulder, and that he had peritendinitis in the right shoulder. It was established that these conditions produced much pain; that they were disabling and would probably continue. Bogany urges that the evidence shows he not only suffered the loss of an arm but that he also received disabling injuries to his shoulder, his neck and his back for which he was entitled to a general recovery. On this issue the district court agreed with the defendant insurer and directed a verdict for it upon which judgment was entered. From the judgment Bogany has appealed and the decisive question with us is whether the court erred in taking the case from the jury. This is a Texas case and is to be decided by the provisions of its statutes as interpreted by the decisions of its courts.

For total incapacity for work a disabled employee is entitled to workmen's compensation payments of sixty per cent. of his average weekly wages, but not more than $25 nor less than $9 for not more than 401 weeks. Vernon's Ann. Tex.Stat. art. 8306, Sec. 10. Certain specific injuries are enumerated in the Texas statutes for which designated compensation is fixed, and for such injuries the recovery is limited to the amount designated. For the loss of an arm at or above the elbow, the award is fixed at sixty per cent. of the average weekly wage, with the same minimum and maximum provisions as the section covering general disability, for 200 weeks. Vernon's Ann.Tex.Stat. art. 8306, Sec. 12.

In determining whether a verdict was properly directed for the defendant a reviewing court will consider the evidence and all inferences that might be drawn from it in the light most favorable to the plaintiff. The public policy of Texas requires the Workmen's Compensation Act to be liberally construed in favor of employees. See Hargrove v. Trinity Universal Ins. Co., 152 Tex. 243, 256 S.W.2d 73, 75, where it is said, "A liberal interpretation will award him the greatest benefits the nature of his injuries will sustain". With these doctrines before us we have gone through the record and from the welter of testimony we have sought such evidence as might tend to support the appellant's contentions. The appellant and appellee direct our attention to the portions of the record which they believe sustain them in their several positions.

The appellant testified that he was a good man before he was injured but hadn't been able to work since, that he was in constant pain in his neck and shoulder. Dr. J. Markewich testified as a witness for the plaintiff. He testified as to the appellant's arthritis, the bone atrophy in the shoulder girdle, the peritendinitis and the pain which the appellant suffered. He was asked whether the appellant's pain in the neck region was caused by the accident or by the arthritic condition or an aggravation of the arthritic condition. The witness replied:

"The pain he complained of at the present time in my opinion is due more to the injury to his arm and shoulder and could be probably as much secondary pain in the neck from this shoulder from the atrophy and from tendinitis that radiates into the neck as much as it can be to actually arthritic process. Now the only way the arthritic process could be causing pain is if it was there before an accident, from aggravation or sudden twist or jerk in motion, as he experienced, causing that narrowing in that inner space. It could be a combination of both, but more likely it's the result of the original injury and the secondary complications that had developed since then which has involved the entire shoulder or girdle all the way to the cervical spine, and many people can get radiating pain from one area into the neck.".

He expressed the opinion that most of the neck pain was coming from the shoulder girdle rather than from the arthritis. Dr. T. R. Gardner, the surgeon who amputated the appellant's arm, was a witness for the appellee. He stated that peritendinitis in the shoulder is very painful and a person suffering from it would use his arm less than if he didn't have it. The loss of the arm, he said, would cause a lessening of the use, and the lessened use could result in the atrophied condition. He stated that the injury was not confined to the arm but extended into and affected the shoulder girdle.

Dr. Joe W. King, an orthopedic surgeon, testified for the appellee, and primarily upon his testimony the appellee seeks to sustain the judgment of the district court. Peritendinitis, he said is very painful, that it was caused by adhesions and adhesions could result from an injury. He was asked whether the appellant's injury was limited solely to his arm or extended into and affected

his shoulder girdle. The witness answered:

"The best I can tell and what I think is that the man had an injury to his arm. Certainly he could obtain at that time, and I would have expected him to obtain, sprain or injury to his shoulder. I don't think that I can get my arm cut in two or caught into something and pull real hard without doing that. Sure, if I got my arm cut, I would jerk and I would jerk pretty hard, and I wouldn't be surprised if I wouldn't, sprain my shoulder in doing so. I think that if he obtained sprain or anything to his shoulder joint at that time, and I could readily see why he would, I can find no evidence of that being anything permanent as far as the injury to the shoulder at that time is concerned. Certainly at the present time he has disability as far as his shoulder girdle is concerned."

The peritendinitis and the atrophy, he thought, came from disuse of the arm following amputation. The neck condition, which he believed to be a degenerative disc having its origin before the accident, could, he said, have resulted from the injury.

Such are the portions of the evidence most favorable to the appellant. The court, although recognizing a disability of the shoulder as well as an injury and disability of the arm, was unable to see any evidence that the shoulder involvement, the peritendinitis and the other shoulder conditions, were other than the result or the effects of the loss of the arm, and that recovery was limited to the specific injury to the exclusion of any award for the general injury.

■ The applicable rule has been thus stated:

"If the injury does not extend beyond the member, the loss is definitely and arbitrarily fixed so as not to exceed the complete loss of that member under the statutory scheme of compensation. But we take the rule to be, if an injury to a specific member does not stop with the injury to or loss of that member, but for any reason continues as an injury affecting the body to such extent as to result in permanent or partial total disability, a recovery may be had therefor, even exceeding the statutory compensation for the complete loss of that member. In such a case, the injury is general and not confined to the specific member." Standard Accident Insurance Co. v. Williams, Tex.Com.App., 14 S.W.2d 1015, 1016.

A more recent statement of the rule as to when compensation for general disability may be recovered where a specific injury is received is as follows:

"Where injury results to a particular member of the body, compensation for the loss of which is specifically provided by statute, the liability of the insurer is limited to that amount, even though the loss of or injury to that particular member actually results in total permanent incapacity of the employee to labor. But an employee is not precluded from recovering for total incapacity if he alleges and proves that the injury to the particular member also extended to and affected other portions of his body, or impaired his general health to such an extent as to totally and permanently incapacitate him. If this question is determined in favor of claimant, then he is entitled to recover under Section 10 of Article 8306. [Citing cases]". Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463, 464.

The above language taken from the opinion of the Texas Supreme Court in the Consolidated Underwriters case is quoted with approval in 1956 by the Court of Civil Appeals of Texas in Coleman v. Hartford Accident & Indemnity Company, 297 S.W.2d 236. The Supreme Court of Texas has rephrased the rule in this language:

"Compensation for a specific injury is provided in Section 12 of the

compensation law, Vernon's Ann. Civ.St. art. 8306, but if the injury affects other portions of the body and causes incapacity, compensation is recoverable and may exceed the amount provided for in Section 12; for in such case the injury is general and not confined to the specific member as provided in Section 12." Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312, 313.

In Texas Employers' Ins. Ass'n v. Brownlee, 152 Tex. 247, 256 S.W.2d 76, the appellee lost two fingers in an accident and claimed a partial loss of the use of his hand. It was held that the evidence conclusively showed the disability to be due solely to the loss of the fingers, but the rule of Consolidated Underwriters v. Langley, supra, was recognized and quoted. The rule was also recognized in Texas Employers' Ins. Ass'n v. Hartel, Tex.Civ.App., 289 S. W.2d 380, where an employee sustained an injury to fingers and claimed compensation for the loss of use of his arm. The court held that, except for atrophy resulting from lack of use, no injury resulted to the arm and recovery was limited to the award for the loss of specific members. The case of Texas Employers' Ins. Ass'n v. Brownlee, supra, was the precedent for the decision.

Where a claimant sought recovery for general disability because of injury to his ankle and foot by a timber falling on it, a judgment upon a jury verdict for a general disability award was affirmed, the plaintiff having testified as to a resulting disability of his hips and other leg. American Motorists Ins. Co. v. Black, Tex.Civ.App., 253 S.W.2d 678. See also Meyer v. Great American Indemnity Co., 154 Tex. 408, 279 S.W.2d 575; Tex.Civ.App., 285 S.W.2d 276.

Cases such as those cited and the one before us are in large measure fact cases. The question before us is whether the appellant has established or submitted substantial evidence tending to establish an extension of the injury and that disability resulted therefrom. Meyer v.

Great American Indemnity Co., supra, If there was no substantial evidence that the appellant's arm injury extended to and affected other parts of the appellant's body then the court properly directed a verdict limiting recovery to the specific injury. Texas Employers' Ins. Ass'n v. Mahlow, Tex.Civ.App., 304 S.W.2d 161. In the case before us the evidence was conflicting, but we think that the testimony which the appellant produced, some of which we have outlined, was such as required the submission to the jury of the issue on the general disability. A new trial should be had and hence the judgment is

Reversed.