The opinion of the Commission of Appeals is adopted, and the relator discharged.

## LINDIG v. JOHNSON CITY STATE BANK.
### No. 1276—5731.

Commission of Appeals of Texas, Section B.
July 22, 1931.

N. T. Stubbs, of Johnson City, for plaintiff in error.

H. H. Sagebiel, of Fredericksburg, for defendant in error.

RYAN, J.

1. On June 1, 1923, Otto Burrer bought 425 head of goats from Harry Beck and Her-

man Lindig, in payment for which he executed his promissory note for $1,288.90, payable five months after that date, with 8 per cent. annual interest and 10 per cent. attorney's collection fee in case of default in payment. Said note provides: "This note is secured by 425 goats including mohair."

Said note was acquired by Charles Lindig (father-in-law and father respectively of the payees) soon after its execution, for value, and Burrer made payments to him from time to time, until the indebtedness was reduced to approximately $400 and about 160 goats remained on hand, the others having died or been sold.

In the fall, close to December, of 1926, Charles Lindig, with Burrer's consent, took possession of the remaining goats, sold them for $640, applied the proceeds to payment of the balance due on said note and set aside the excess as a special fund which he tendered into court to be disposed of as the court should decide.

2. To secure an antecedent debt to the Johnson City State Bank of approximately $4,000 (evidenced by their notes all dated June 1, 1926, and due October 1, 1926), Burrer and wife, on June 3, 1926, executed chattel mortgage on 30 head of cattle, 5 horses, 3 mules, and 150 goats, and their increase.

Burrer testified, without contradiction, that everything he owed the bank was so owing prior to June 3, 1926, when he executed the mortgage, that he obtained no money from the bank after that date; he testified also that the goats described in the bank's mortgage were bought by him from Herman Lindig and Harry Beck, on credit.

Burrer further testified that he told the bank's cashier when he executed the mortgage that he could not give the bank a first lien on the goats because Charles Lindig had such a mortgage, but the cashier said that made no difference and he could mortgage them again.

This was denied by the cashier who further testified that Burrer offered the goats as additional security to get more time on his indebtedness.

3. The bank filed suit in the district court of Blanco county against Burrer and wife, and on October 19, 1926, obtained judgment by default against them for the amount of its debt, interest, and attorney's fee, with foreclosure of its lien on the personal property described in said chattel mortgage and of a second mortgage lien on certain real estate therein described. At the bank's request it was ordered that no order of sale or execution should issue on said judgment until on or after December 1, 1926.

On December 8, 1926, order of sale issued, and under it the sheriff of Blanco county levied on and sold all the property described in the judgment, except the goats, which the sheriff reported could not be found in Blanco county. The proceeds of such sales were credited on the judgment.

4. This suit was filed on August 8, 1928, in the district court of Gillespie county, by the bank against Charles Lindig, to recover the value of the goats, on the allegation that said Lindig, without the bank's knowledge and consent, took exclusive possession thereof and converted the same to his own use and benefit, although said goats were subject to the bank's lien and claim for the unsatisfied balance due on the judgment against Burrer and wife; it appears from the recitals in the petition that such unsatisfied balance due is in excess of the value of the goats.

5. The defendant, Lindig, by special answer, alleged execution and delivery of the lien and note dated June 1, 1923, by Burrer to Harry Beck and Herman Lindig, his ownership thereof, for a valuable consideration paid by him to the payees of said note, on or about June 15, 1923, the various payments made by Burrer thereon until on or about October 30, 1926, when there remained unpaid thereon the sum of $400.44 which Burrer was unable to pay, whereupon Burrer turned over the remaining goats, 160 in number, to defendant, who sold them at the reasonable market value of $4 per head, and applied the proceeds of such sale to the balance due him by Burrer, and tendered into court the balance remaining, subject to the court's orders.

6. The trial court submitted to a jury two issues, viz.: "First: Did the plaintiff, Johnson City State Bank, at the time it first secured its chattel mortgage lien on the goats in question, have knowledge of the fact that Charles Lindig held a lien against said goats to secure the note held by him and introduced in evidence?" which was answered "Yes"; and "Second: What was the market value of the goats in question in Blanco County, Texas, in December, 1926?" which the jury answered "$4.00 per head."

The court therefore found that plaintiff bank has a valid lien on the goats in controversy, but that the defendant has a valid prior lien thereon of which the plaintiff had notice, and rendered judgment in favor of defendant for $400.44, to be first deducted from $640 (value of all the goats) and in favor of the plaintiff bank against defendant for the balance, amounting to $239.56, with 6 per cent. annual interest from December 1, 1926, and all costs incurred.

7. On appeal by the bank, the Court of Civil Appeals reversed said judgment and rendered judgment in favor of the bank for $600, with interest and all costs of suit. 26 S.W.(2d) 658.

### Opinion.

■ Beck and Lindig and their assignee, Charles Lindig, had a valid chattel mortgage

lien on the goats in controversy, as between them and Burrer, although not filed and registered under the Chattel Mortgage Act. S. A. Brewing Ass'n v. Arctic Mfg. Co., 81 Tex. 99, 16 S. W. 797; Keller v. Smalley, 63 Tex. 519; Sparkman v. First State Bank, 112 Tex. 33, 244 S. W. 127; Snyder v. First National Bank (Tex. Civ. App.) 32 S. W. 162; Stewart Lumber Co. v. Miller Lumber Co. (Tex. Civ. App.) 144 S. W. 343.

It is contended by the bank that under article 5489, Rev. Stat., such chattel mortgage is void as to it, because not registered as required of chattel mortgages.

That article is as follows: "All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. Nothing in this law shall be construed to contravene the landlord and tenant law."

Under article 5490, Rev. Stat., every chattel mortgage upon personal property not accompanied by an immediate delivery followed by an actual and continued change of possession of the mortgaged property shall be absolutely void as against creditors of the mortgagor and as against subsequent purchasers and mortgagees or lienholders in good faith, unless forthwith deposited and filed in the proper county clerk's office.

In construing the latter article, Judge West, in Brothers v. Mundell, 60 Tex. 240, said that a distinction exists between "creditors" on the one hand and "subsequent purchasers and mortgagees in good faith" on the other hand, because of the peculiar language of the statute. He concluded that "good faith" shall be required only of purchasers, mortgagees, or lienholders of the original mortgagor, but, as to "creditors" of the mortgagor, the instrument shall be absolutely void, no matter whether they acted in good faith or not in crediting the mortgagor or in seeking to enforce their debts against the mortgaged property.

The contest in that case was between an attaching creditor and the purchaser at foreclosure sale of a stock of goods growing out of a mortgage under the Chattel Mortgage Law. The attaching creditor was not a party to the foreclosure suit, and therefore not bound by the judgment rendered therein, and hence it became necessary for the other party to establish the validity of his mortgage in the then pending suit.

■ Lindig was not a party to the bank's foreclosure suit against Burrer, and therefore not affected by the judgment therein rendered, and the subsequent proceedings in the foreclosure suit were not binding on him, just as the mortgage foreclosure judgment and subsequent proceedings in Brothers v. Mundell were not binding on the attaching creditor.

We must therefore inquire if the bank is a "creditor" within the meaning of the Chattel Mortgage Law.

Chief Justice Willie, in Overstreet v. Manning, 67 Tex. 657, 4 S. W. 248, 251, defined a "creditor" within the meaning of the Chattel Mortgage Law as one who has acquired a lien by some process of law, and does not include mortgagees and other lienholders by contract or act of the parties.

In Bowen v. Lansing Wagon Works, 91 Tex. 385, 43 S. W. 872, 874, Justice Denman said that the term "creditors," as used in article 3327 (equivalent to article 5489, Rev. Stat. 1925) and article 3328 (substantially equivalent to art. 5490, Rev. Stat. 1925), have the same meaning, and the word "purchasers" in the first includes the same persons as "purchasers, etc.," in the second, and includes all persons who have fixed their liens by contract or act of the parties, and embraces holders of claims secured by trust deed or mortgage, who, in order to bring themselves within the terms of the act, must show that they hold "bona fide" or "in good faith," and in order to do so they must prove, not only a consideration advanced, but that they had no notice of the unrecorded lien. This consideration must not be a pre-existing debt. Overstreet v. Manning, 67 Tex. 663, 4 S. W. 248; Bowen v. Wagon Works, supra.

The statute does not make the requirement of good faith as to creditors, but it does make such requirement of subsequent purchasers and mortgagees or lienholders. Oak Cliff College v. Armstrong (Tex. Civ. App.) 50 S. W. 610.

■■ Therefore the bank was not a "creditor" within the meaning of the Chattel Mortgage Law, and its claim must come under the second class, of which good faith is required and must be shown before it can be given preference over the unregistered mortgage held by Lindig. Good faith can only be shown by proof of payment of a valuable consideration and want of notice of the prior unregistered mortgage.

■■ The jury's finding that the bank, at the time it first secured its chattel mortgage lien on the goats in question, had knowledge of the fact that Lindig held a lien against said goats to secure the note held by him, is fatal to its recovery as against Lindig, because it was not (having such knowledge) a bona fide purchaser, which term, as used in the statute, embraces a holder of a contract lien such as the bank claims under. Commercial Credit Co. v. Schlegel-Storseth Motor Co. (Tex. Com. App.) 23 S.W.(2d) 702; Neely-Harris-Cunningham Co. v. Lacy Bros. (Tex. Civ. App.) 152 S. W. 441; Tips v. Gay (Tex. Civ. App.) 146 S. W. 306.

225

It is also contended by defendant in error that the issue of whether the bank, when it first secured its chattel mortgage lien, had knowledge of the prior Lindig lien, should not have been submitted, for the reason, as stated in its objections to the trial court's charge, "that under the legally admissible testimony and the law as applicable to the facts of this case, the submission of such issue is unwarranted."

As above stated, the bank was not a "creditor" within the contemplation of the Chattel Mortgage Law, and therefore the effectiveness of its lien as against that of Lindig depended upon its being a bona fide purchaser or lienholder in good faith. There was a conflict in the testimony on the subject, and the issue was therefore properly submitted to the jury as a question of fact.

The bank's petition alleged the recovery in debt and foreclosure of a mortgage lien against Burrer in a proceeding to which Lindig was not a party, and Lindig's subsequent conversion of the goats in question without the bank's knowledge or consent.

The bank's petition showed that its claim was not as a "creditor," but only as a mortgagee.

■ The defendant Lindig pleaded his anterior mortgage; the pleadings of the parties raised the issue, and the question of good faith between Lindig, the senior lienholder, and the bank, as junior lienholder, was necessarily involved, the burden of proving which, on the part of the bank, rested on the bank.

In Turner v. Cochran, 94 Tex. 480, 61 S. W. 923, 924, Judge Williams announced the rule in this character of cases to be: (1) as against a creditor whose lien has been fixed by legal process, the holder of a prior unrecorded instrument from the debtor has the burden of proving notice of his right to such creditor at the time of or before the attaching of the lien, but (2) a junior purchaser or lienholder, attempting to defeat a prior unrecorded deed or lien from the same grantor for the same property, has the burden to show that he is a holder for valuable consideration and without notice of the previous instrument.

In that case the controversy was between the claimant under an unrecorded deed to land, and a subsequent mortgage creditor. Judge Williams said:

"Since we can discover no reason why a junior mortgagee in this respect should be regarded as holding a stronger position than that of the holder of a junior deed, we cannot assent to the contention that a different rule as to burden of proof applies to them. The reason of the rule, as between two holders of deeds from the same party, is that the first deed has passed the legal title to the grantee therein, and upon this he is entitled to stand and to recover until the facts prescribed by law to defeat it have been made to appear (McAlpine v. Burnett, 23 Tex. 652); and this reason certainly operates with as much force against a junior mortgagee as against a junior vendee. This would hardly be questioned were it not for the difference made by the decisions referred to between purchasers and creditors with liens fixed by law. If there is any reason which distinguishes the case of the junior purchaser from the classes of creditors mentioned, it equally distinguishes from them the case of a junior mortgagee.

"We therefore conclude that the burden of proof was upon those claiming under the junior mortgagee to show the facts which would give it precedence over the prior deed."

Here the court's charge required the jury to find the issues of fact "from a preponderance of the credible evidence adduced" and placed the burden of proof upon the bank. This was not error. Lindig's mortgage was superior to that of the bank in the absence of allegation and proof by the bank that it had paid value without notice. Good faith can only be shown by proof of payment of valuable consideration and want of notice of the prior mortgage. Neely-Harris-Cunningham Co. v. Lacy Bros. (Tex. Civ. App.) 152 S. W. 441.

The jury having found that the bank, at the time it secured its chattel mortgage lien, had knowledge of the prior Lindig lien, it was therefore not a purchaser or lienholder in good faith as against Lindig, and the trial court rendered the proper judgment.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.