**FIRST NAT. BANK IN DALHART v. FLACK et al.**

**No. 5965.**

Court of Civil Appeals of Texas. Amarillo.

May 23, 1949.

Rehearing Denied June 25, 1949.

456

Morgan, Culton, Morgan & Britain, Amarillo, and Jennings & Evans, Tulia, for appellant.

James W. Witherspoon and John D. Aikin, Hereford, and Dennis Zimmerman, Tulia, for appellees.

LUMPKIN, Justice.

This case concerns the question of which of two chattel mortgage liens is the superior. It involves transactions whereby one of two innocent parties must suffer a loss by reason of the defalcation of a third party. E. T. Flack and Lowell A. Wier, appellees, and First National Bank in Dalhart (Texas), appellant, are the innocent parties. Robert Walton is the third party. In this opinion the appellant bank is sometimes referred to as appellant. Walton is referred to by name only.

On April 13, 1946, Walton borrowed $4,766.94 from appellant bank secured by a chattel mortgage on 43 head of registered Angus cattle. In connection with this loan Walton made a sworn financial statement in which he listed as assets the following livestock:

| "30 head of cows Reg. Angus | total cost | $300. | $9000.00 |
|---|---|---|---|
| 13 head of Bulls Reg. Angus | " " | 500. | 6500.00 |
| 86 head of cows, Angus | " " | 150. | 12900.00 |
| 6 head of horses | " " | 50. | 300.00 |

$28,700.00"

Among his liabilities Walton listed a loan of $5,600 from the First National Bank in Raton (New Mexico). This loan was secured, according to Walton's statement, by a chattel mortgage on 86 head of Angus cows and was due July 22, 1946.

Nine days later Mr. Charles C. Woods, appellant's president, inspected Walton's cattle located in Las Animas County, Colorado; and on the following day, April 23, Woods, acting for the appellant, made a second loan to Walton. This loan was in the amount of $12,390.65 and was secured by a chattel mortgage on 247 head of cattle, i. e., 86 cows, Angus; 65 calves, Angus; 70 cows, Hereford; 22 calves, Hereford; 3 cows, black; 1 cow, red—all branded Lazy G or $\overline{RW}$. Appellant bank contends that only 78 Angus cows and 30 calves are involved in this suit. The purpose of this second mortgage was to purchase 74 head of Hereford cattle and to pay off a loan of $6,092.57 owed the Raton bank and secured by a chattel mortgage on the 86 head of Angus cows named in Walton's financial statement.

At the time of the second loan, the Dalhart bank did not take another financial statement from Walton but made the loan on the basis of the statement made April 13 and on Walton's representation that the Raton bank held a mortgage on 86 Black Angus cows and 65 calves securing three notes totaling $6,050. Woods called the Raton bank and asked how much Walton owed and if the bank would execute a release. Soon thereafter Walton paid the Raton bank, and its release was filed for record in Las Animas County, Colorado. The chattel mortgage of April 23 contains an affidavit of ownership executed by Robert Walton. Since the cattle were located in Las Animas County, the mortgage was filed for record there on April 24, 1946. The note and mortgage of April 23 were renewed by Walton on May 16, 1946, by note and mortgage, and this renewal mortgage was filed for record in Las Animas County. Thereafter, at the appellant's request, the county clerk of Las Animas County prepared an abstract which shows that the only unreleased mortgage against Walton was the one of May 16 filed by appellant. Walton at all times represented

to the appellant that he owned the Black Angus cattle covered by mortgages of April 23 and May 16.

The record, however, reveals that Walton had never owned these cattle. They were the property of the appellees, E. T. Flack and Lowell A. Wier, of Galesburg, Illinois, who on February 1, 1946, at Clovis, New Mexico, in partnership with one Quincy Reeves, had purchased a herd of 114 cows and 23 calves, all Black Angus cattle. The appellees paid $12,427.50 as one-half of the purchase price of the cattle. Some of the cows were branded Lazy G. Reeves and the appellees sold a few of these cattle through the Clovis sales ring, and the remainder were loaded and shipped to a point near Raton, New Mexico, where an arrangement was made with Robert Walton to pasture them on a place Walton had under lease. Later, Reeves and Walton, who acted for the appellees, divided the cattle. Except for one inspection about a week after purchasing the cattle, appellee Flack did not see the cattle again until July 1, 1946, when he was surprised to find them branded $\overline{RW}$. Walton had placed his brand on the cattle without appellees' knowledge or consent. Within a few hours after this discovery appellee Flack sold the herd to Walton—87 Angus cows and 65 Angus calves, branded $\overline{RW}$—for a consideration of $10,183.16. This price took into consideration the expense Walton had incurred in caring for the cattle since their delivery to him. The sale was on credit. To evidence the purchase of the cattle and the sale made by Flack, Walton executed a conditional sales note or contract due January 1, 1947. This conditional sales contract was never filed for record by the appellees. On November 24, 1946, Walton, with appellee Flack's assistance, moved the cattle to Swisher County, Texas. The record shows that Flack did not know that Walton had mortgaged the cattle to the appellant bank until a short time before this suit was filed.

While these transactions were taking place, Walton on November 30, 1946, on January 21, 1947, and again on February 26, 1947, renewed his original note of April 23, 1946, with the Dalhart bank. The note and mortgage of November 30 included additional money advanced to Walton: $325.60 for bundles; $453.35 for freight to Swisher County; $116.60 for trucking; and $185.35 for interest. About April 1, 1947, the appellant learned that the appellees were claiming an interest in the cattle, and a few days later this suit was filed in Swisher County by the appellees against the appellant and Robert Walton; and, still later, the appellant bank filed a cross action against appellees and Walton.

The record reveals that Walton was not present at the trial of the case; that except for a few sold to a Fort Worth concern and the cattle in controversy, the appellant was unable to find out what had happened to the cattle covered by the mortgages; that other than $100 paid by Walton on October 20, 1947, the appellant has received nothing on its notes; that nothing was paid by Walton to the appellees; that the mortgage of November 30 was filed for record in Swisher County; and that prior to the trial of this case, by agreement of the parties, the cattle in controversy were sold and the money was placed in escrow in a bank at Tulia, Texas.

■ The appellant contends that the only pertinent issue involved in this case is whether the Dalhart bank is a subsequent mortgagee or lien holder in good faith within the contemplation of Article 5490, Vernon's Revised Civil Statutes, or a purchaser for consideration without notice under Article 6645. The term "good faith," as employed in Article 5490, means, as applied to purchasers and mortgagees, the payment of value or other consideration and the absence of notice. 9 Texas Jurisprudence 102.

■ The only interest created by a conditional sales note or contract is the interest of a chattel mortgage. Article 5489, Vernon's Annotated Civil Statutes; Gardner v. Associates Inv. Co., Tex.Civ.App., 171 S.W.2d 381. The problem, therefore, is to determine which of the two chattel mortgages creates the superior lien on the cattle in controversy: whether it is the appellant's mortgage of November 30, 1946, filed for record in Swisher County, or the mortgage created by the unrecorded condi-

458

tional sales note of July 1, 1946, held by the appellees. Obviously the mortgages executed by Walton at a time when he did not own the cattle would be without force or effect. If it can be shown that the Dalhart bank had notice, either actual or constructive, of the existence of the sales contract, then the lien created by the sales contract will be superior to that created by the recorded chattel mortgage of November 30.

■ Whether a party is put on inquiry and charged with notice of a chattel mortgage is ordinarily a fact question for a jury. Lindig v. Johnson City State Bank, Tex.Com.App., 41 S.W.2d 222; General Motors Acceptance Corporation v. Fowler, Tex.Civ.App., 36 S.W.2d 589. To determine this question the trial court submitted to the jury the following special issue:

"Do you find from a preponderance of the evidence that the witness Charles Woods knew or had notice of any fact regarding the ownership of the cattle in question which would or should have, by the use of proper diligence, cause a reasonably prudent business man to make such an inquiry as might have disclosed the interest of the plaintiffs in the cattle in controversy?" To this special issue the jury answered, "Yes."

In answer to other special issues the jury found that the appellees did not permit Walton to handle the cattle in such a manner as to induce a reasonably prudent business man to believe that he had authority to mortgage them and that a partnership did not exist between E. T. Flack and Robert Walton respecting the cattle in controversy prior to the execution of the conditional sales contract. In answer to appellees' requested special issue, the jury found that the appellees were the sole owners of the Black Angus cattle from the date of their purchase at Clovis, New Mexico, until the date of the execution of the conditional sales note. In its judgment the trial court found the lien created by appellees' conditional sales contract to be superior to that created by appellant's recorded mortgage. It found the appellees damaged in the sum of $11,482.40. The court ordered $920, the proceeds of the sale of eight bulls not covered by appellees' lien

and covered by appellant's lien, to be paid to appellant bank. The court also found that the appellant is entitled to a judgment against Robert Walton in the sum of $17,-643.28, that this sum is secured by a lien upon $13,240, the proceeds of the sale of the cattle in controversy and now in escrow in the First National in Tulia, but that such lien was inferior to appellees' lien. The court ordered appellant to have and recover its damages against Walton. It ordered the sum of $920 to be first paid to the appellant, that the appellees be next paid the full amount of their damages in the sum of $11,482.40, that the balance of the escrow money be paid the appellant bank, and that the appellees recover all costs in this proceeding against the appellant and Walton.

■ It is a general rule that whatever puts a party on inquiry amounts in law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. This rule is sometimes resorted to for the purpose of finding a ground of preference between equities otherwise equal. It is generally applied as a result of bad faith, fraud, or gross negligence on the part of those charged with notice.

The general doctrine of imputed notice, however, has certain limitations. The rule does not impute notice of every conceivable fact, however remote, that could be learned from inquiry. It imputes notice only of those facts which are naturally and reasonably connected with the fact known and of which the known fact can be said to furnish a clue. The known fact must be directly related to the ultimate knowledge or primary question. More fully stated, the known fact must be such as to imperatively demand that a person of ordinary care and prudence investigate to the end that the truth with reference to the ultimate fact may be disclosed. Wynne v. Admire et al., Tex.Civ.App., 37 S.W. 33; College Park Electric Belt Line et al. v. Ide et al., 15 Tex.Civ.App. 273, 40 S.W. 64; American Surety Co. of New York v. Bache et al., Tex.Civ.App., 82 S.W.2d 181, error refused; McFarland's Adm'r. v. Louisville & N. R. Co., 130 Ky. 172, 113 S.W. 82;

Hawkes v. Hoffman et ux., 56 Wash. 120, 105 P. 156, 24 L.R.A.,N.S., 1038; Zeller v. Milligan et al., 71 Cal.App. 617, 236 P. 349.

The ultimate fact in this case is the existence of appellees' unrecorded conditional sales contract. The appellees point out several circumstances which should have furnished a clue sufficient to cause a reasonable and prudent man to investigate further: viz., Robert Walton was a stranger to Woods and a nonresident of Texas; when Woods investigated the cattle on April 22, they were mingled with cattle belonging to Quincy Reeves and not branded with the Walton brand; that the mortgage held by the Raton bank, which was paid on April 23, was not due until July 22. In our opinion none of these circumstances furnished a reasonable or an actual clue to the fact concerning appellees' interest in the cattle; none of these circumstances was of such a nature as to imperatively demand further investigation.

 Woods exercised the usual customary precautions of a banker making a loan on cattle. He required a sworn financial statement in which Walton stated he owned 86 head of Angus cows and that he owed $5,600 to the first National Bank in Raton. The record reveals no reason why Woods should not have believed Walton when he made this statement. Nine days later Woods inspected the cattle and there found the cattle claimed by Walton in a herd containing cattle belonging to Quincy Reeves. Is the fact that cattle other than those in controversy were present in the herd sufficient to arouse Woods' suspicion to a point where a reasonable, prudent banker would have gone to the trouble, expense, and possibility of embarrassment to question Quincy Reeves as to the ownership of the cattle Walton had sworn were his? We doubt this. Assuming that this fact was sufficient to create a slight suspicion as to the circumstances of appellees' interest in the cattle, the courts are consistent in holding that facts which give rise to nothing more than a mere suspicion in the mind of a prudent man are not sufficient to charge notice. General Motors Acceptance Corporation v. Fowler, supra; Billingsley v. Mossler Acceptance Co., Tex.

Civ.App., 119 S.W.2d 196. About the same answer can be made to the other circumstances pointed out by appellees. In retrospect we can readily perceive that an inquiry concerning any one of these circumstances would have led Woods to a discovery of appellees' interest. But the fact that a person could learn of a thing is not equivalent to knowledge, and in our opinion none of the circumstances pointed out by the appellees present a reasonable and natural clue or guide or key to the discovery of appellees' interest in the cattle.

 The appellees argue that Woods is an interested witness, that his testimony is uncorroborated, and that because of these facts the jury had the right to disregard and disbelieve his testimony, notwithstanding the fact that Woods' testimony stands uncontradicted and the witness unimpeached. In our opinion, however, the record reveals sufficient corroboration of his testimony. Woods stated that he acted in good faith, that he paid a valuable consideration for the mortgage, that he placed the mortgage of November 30 of record in Swisher County, that he had not the slightest suspicion of Walton's nefarious acts. The record shows no evidence of bad faith, fraud, or gross negligence on the part of Woods. As stated by this court in Boyd v. Chicago, R. I. & P. R. Co., Tex.Civ.App., 149 S.W.2d 1053, 1056, "While a jury is permitted to disregard the evidence of interested witnesses it is not allowed after discarding such testimony to find a verdict contrary thereto without testimony from some source to warrant their finding." Wood's testimony is not contradicted and fails utterly and completely to support the jury's finding that he had notice of the circumstances of appellees' conditional sales contract. The test of whether the evidence is sufficient to support the jury's verdict is to be found in the well established rule of law which directs that we must give credence only to that evidence favorable to the verdict and disregard all circumstances to the contrary. Applying this rule, we find no evidence of probative force to support the verdict of the jury. Alexander Marketing Co. v. Medford, Tex. Civ.App., 170 S.W.2d 809, and other authorities there cited.

460

The appellant contends that the trial court erred in overruling its motion for an instructed verdict. In our opinion the appellant is correct in its contention. Where there is conflicting evidence on the question of whether a person had notice, the issue is one for the jury. Woods was the only witness who gave evidence concerning the facts surrounding the question of notice, and his testimony is uncontradicted. Whether notice is sufficient is a question for the court. 39 American Jurisprudence 252.

In our opinion, the facts are not sufficient to show notice, and therefore the trial court erred in overruling appellant's motion for an instructed verdict. This being true, the lien created by appellant's recorded mortgage is superior to that created by appellee's unrecorded conditional sales contract. In the trial of the case opportunity was afforded for a full and exhaustive development of the testimony. Nothing could be gained by remanding the cause for another trial. The judgment of the court below is reversed, and judgment is here rendered for the appellant, First National Bank in Dalhart.