**C. B. THOMPSON, Plaintiff in Error,**

v.

**Marilyn IRVIN now Hodges, individually and as administratrix of the estate of R. M. Irvin, dec., and C. T. (Whitey) Wilburn and Dick Truitt, Defendants in Error.**

No. 39015.

Supreme Court of Oklahoma.

May 23, 1961.

King & Wadlington, Ada, for plaintiff in error.

Busby, Stanfield, Deaton & West, Ada, for defendants in error.

BERRY, Justice.

In this action, plaintiff in error, C. B. Thompson, hereafter referred to as "plaintiff", seeks, as an alleged mortgagee, to recover judgment against the defendant in error, Marilyn Irvin now Hodges, hereafter referred to as "Mrs. Hodges", and C. T. (Whitey) Wilburn for possession of a stallion or its value, and for damages against Mrs. Hodges in her individual capacity and in her capacity as administratrix of the estate of her father, R. M. Irvin, deceased, for detention of the horse. Wilburn and intervenor, Dick Truitt, claim a lien on the horse for boarding and caring for it. Wilburn had possession of the horse as of date this action was filed.

A jury was empaneled to try the case. At the conclusion of plaintiff's case in chief, a demurrer was interposed which was sustained as to Mrs. Hodges and Wilburn. Trial of the issues presented by Truitt's plea in intervention was reserved.

From order denying plaintiff's motion for new trial, he perfected this appeal.

The sole issue presented by this appeal is whether plaintiff had a chattel mortgage lien on the stallion.

The facts bearing upon the referred-to issue are these: On or about November 10, 1957, R. M. Irvin called at the home of Rex Barrett in Pampa, Texas, for the purpose of (1) obtaining Barrett's assistance in registering with the American Quarter Horse Association, hereafter referred to as "Association", some horses that Irvin had theretofore purchased from Barrett, and (2) purchasing other horses from Barrett. Following negotiations, which extended over a period of two days, Barrett agreed to sell and Irvin agreed to buy a "using horse" at the price of $300, and a black stallion for $1,500. The stallion was registered with the Association.

Irvin advised Barrett that he would pay for the using horse but wished to give a note secured by a chattel mortgage for the stallion. Barrett agreed. The parties were unable to find a form of chattel mortgage at Barrett's home where negotiations for the sale of the horses had been conducted and in lieu of the usual chattel mortgage, Irvin drafted the following referred-to instrument, which is hereafter referred to as "note", which he stated would serve the same purpose as the usual chattel mortgage:

"Name R. M. Irvin      Amt. $1,500.00
"Pampa, Texas Nov. 12, 1957
"One year after date for value received, I, we, or either of us promise to pay to the order of
          C. B. Thompson
"Fifteen hundred and no/100      Dollars
(there followed a provision relative to rate of interest, possible attorney's fees, etc.)
"Secured by one black horse No. 47,886
                    s/"R. M. Irvin
"Due 11/12/58"

The number 47,886 shown on the note was the registration number given the stallion

by the Association upon the stallion's being registered with it.

As of date of sale, Barrett owned a half interest in the stallion and plaintiff owned the remaining interest.

It appears that under the regulations of the Association, every transfer of a horse that it has caused to be registered must be recorded with it. The Association caused to be prepared a form of "Transfer Report" covering the transfer of horses registered with it and made same available to interested persons. In said report, reference is made to the referred-to regulations of the Association.

Following his execution of the note, Irvin advised Barrett that it was his wish that the stallion be registered with the Association in Mrs. Hodges' name. In filling in the form of transfer report Barrett showed that he had transferred title to the horse to Mrs. Hodges. It appears that Mrs. Hodges' name had not been mentioned during the negotiations that led to sale of the stallion and that her name was not in fact mentioned until after Irvin had executed the note.

A few months following sale of the stallion, Irvin died intestate. Proceedings to probate his estate were instituted in the County Court of Ellis County, Oklahoma. Plaintiff filed a claim based upon the note with Mrs. Hodges as administratrix of Irvin's estate which was allowed in the principal amount of the note and accrued interest. No payments have ever been made on the note.

Plaintiff contends that Barrett sold the stallion to Irvin and not to Mrs. Hodges; that the sale occurred wholly in Texas; that under the laws of Texas the note served to give plaintiff a lien on the stallion; that under the law of said State, the oral agreement to give a chattel mortgage also sufficed to give plaintiff a chattel mortgage lien on the stallion.

Defendants contend that Barrett transferred title to the stallion to Mrs. Hodges and not to Irvin; that as to Mrs. Hodges, plaintiff did not retain a lien on the horse.

In Clark v. Hawkins, Okl., 321 P.2d 648, we said this in the second paragraph of the syllabus:

"On a demurrer to the evidence, all evidence that is favorable to the demurring party is withdrawn from the consideration of the court, and the remaining testimony, with all reasonable inferences that may be drawn therefrom, should be considered by the court in determining the sufficiency of the evidence to withstand the demurrer."

The above quoted rule is applicable to and will be applied in considering the evidence bearing upon the issues presented by this appeal.

As we understand Mrs. Hodges' contentions, she contends that title to a horse registered with the Association can only be transferred in accordance with its regulations. Mrs. Hodges points to that portion of the Transfer Report providing that "It is forbidden by the rules of the Association to transfer animals to any other person than the actual purchaser. Sellers doing so are liable to the penalties imposed by the Constitution and Bylaws of the American Quarter Horse Association.", and that "Every change of ownership must be recorded upon the record of the Association." She concludes that because of said regulations, Barrett and plaintiff must be said to have sold the stallion to her and not to Irvin; that no lien was reserved as to her and for said reason plaintiff is not in a position to maintain this action. We are unable to agree.

It is stated in the form of Transfer Report that violation of regulations of the Association relative to reporting the sale of a horse registered with it shall serve to automatically suspend the offending person's membership in the Association. It is not shown that Irvin was a member of the Association. We are of the opinion that the primary purpose of the regulations of

the Association was to place it in a position where its records would disclose every transfer of a horse registered with it and therefore show the present owner of a registered animal. The regulations before us fail to show that the Association thought or intended that title to a registered animal could only pass if its regulations relative to reporting a sale thereof were complied with. As a general rule, the recording of a transfer is not essential to its validity. 45 Am.Jur. "Records and Recording Laws," Sec. 81, p. 464. In Owen v. Miller et al., 190 Okl. 205, 122 P.2d 140, we held in substance that failure on the part of a vendor of an automobile to assign the certificate of title thereto, did not prevent passage of title notwithstanding such an assignment is contemplated by applicable statute.

■■ The law appears to be settled in Texas that a chattel mortgage as between the parties thereto may be created by parol agreement and that an equitable mortgage and lien are created by an oral agreement founded upon a valid consideration to give a chattel mortgage. Edwards v. Mayes, Tex.Civ.App., 136 S.W. 510; Sparkman v. First State Bank of Handley, Tex.Com. App., 112 Tex. 33, 244 S.W. 127, and Ranck v. Howard-Sansom Co. et al., 3 Tex.Civ.App. 507, 22 S.W. 773.

In the last cited case, a lien was asserted under an instrument which reads "Alvarado, Texas 10–21–1889. Due James E. Ranck, 30 days after date, (for 29 mules and 1 mare,) $1,300, value received. Mules stand for debt." The instrument was given in part payment of the personal property described in the referred-to instrument. The court on appeal held that the instrument gave the holder thereof a lien and sufficiently described the property that was subject to the lien.

There remains for consideration the matter of whether the lien created by the chattel mortgage can be asserted as to Mrs. Hodges.

The only inferences that can be drawn from the evidence relative to ownership of the stallion are these: (1) Irvin purchased the animal as Mrs. Hodges' agent. If this he did, Mrs. Hodges is bound by the things that Irvin said and did in purchasing the animal and is therefore bound by Irvin's agreement and actions in connection with the lien that plaintiff here asserts; (2) Irvin did not intend, in causing the animal to be registered with the Association in Mrs. Hodges' name, to transfer ownership thereto to Mrs. Hodges and merely had this done as a matter of convenience. If such were his intentions, it is clear that Irvin continued to own the animal and that he held and his estate holds the animal subject to plaintiff's lien; (3) Irvin, in causing the animal to be so registered with the Association, intended to make a gift thereof to Mrs. Hodges. In this event Mrs. Hodges is not in a position to assert that she took the animal free of the lien.

■ It is provided in substance in Art. 5490 "Chattel Mortgages", Vol. 16, Vernon's Texas Civil Statutes, that an unrecorded chattel mortgage "shall be absolutely void as against creditors of the mortgagor or person making same, as against subsequent purchasers and mortgagees or lien holders in good faith." An unrecorded mortgage is, however, good as between the parties thereto. See Sparkman v. First State Bank of Handley, supra. It is not contended that Mrs. Hodges was a creditor of Irvin and under the Texas law she was not a purchaser in good faith.

■ It is stated in 14 C.J.S. Chattel Mortgages § 143, p. 745, that "a transfer which will be protected as against an unfiled mortgage must be bona fide, and for a valuable consideration."

■ The appellate courts of Texas are apparently committed to the proposition that a person will not be considered as a purchaser in good faith within the purview of Art. 5490, supra, where he has not paid a valuable consideration. See Overstreet v. Manning et al., 67 Tex. 657, 4 S.W. 248; Lindig v. Johnson City State Bank, Tex. Com.App., 41 S.W.2d 222, 224; and 9 Texas Jurisprudence 102.

In Rosek v. Kotzur et ux., Tex. Civ.App., 267 S.W. 759, the court stated in substance that in the absence of express agreement to the contrary, a donee of encumbered land takes property subject to the encumbrance, but without obligation to discharge same. We assume that the rule so announced is applicable to the donee of personal property which is encumbered. If Mrs. Hodges took the stallion as a gift, she was not, as above pointed out, a purchaser in good faith and for said reason took the animal subject to plaintiff's lien.

We are of the opinion that plaintiff's evidence tended to show that he had a lien on the stallion; that he was therefore entitled to possession of the animal for the purpose of foreclosing his lien; that the trial court therefore erred in sustaining the demurrer that was interposed to plaintiff's evidence.

Reversed and remanded with directions to sustain plaintiff's motion for new trial, and to grant plaintiff a new trial.

WILLIAMS, C. J., and HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.