John G. SAWYER, Plaintiff in Error,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a corporation, Defendant in Error.

No. 40176.

Supreme Court of Oklahoma.

Feb. 18, 1964.

Rehearing Denied April 14, 1964.

Ratner, Mattox & Ratner, Wichita, Kan., Jack C. Brown, Miami, for plaintiff in error.

E. D. Grinnell, Jr., St. Louis, Mo., Wallace & Owens, Miami, Franklin, Harmon & Satterfield, Joe Crosby, Oklahoma City, for defendant in error.

WILLIAMS, Justice.

The principal question to be determined herein is whether the trial court properly sustained defendant's demurrer to plaintiff's evidence. The parties appear here in the same relative position as in the trial court and further reference to them is here so made.

Plaintiff initiated his action under the provisions of the Federal Employers' Liability Act for damages for personal injuries. In his petition plaintiff alleged that on July 25, 1960, the defendant's train on which he was the conductor derailed; that he sustained severe and permanent injuries; that "for a long time preceding plaintiff's injury, defendant had made a practice of systematically reducing its maintenance of way employees until it was impossible to make a daily inspection of defendant's track"; that "if defendant had made such inspection, it would have discovered that the track" at the site of the derailment "had a sun kink in it"; that defendant negligently failed to properly line, surface and level its track when defendant knew that its trains would be using said tracks daily, all of which constituted undue risk of harm to plaintiff whose duties caused him to ride upon said train.

The defendant for its answer pleaded a general denial, admitted that a sun-kink caused the derailment but denied that it could have been discovered by reasonable inspection. Defendant alleged that the accident was due solely to an act of God, and that no negligence on defendant's part proximately contributed to the cause of the accident.

After plaintiff had introduced his evidence and rested, the trial court sustained defendant's demurrer to plaintiff's evidence. From judgment for defendant and the overruling of his motion for a new trial, plaintiff appeals.

For reversal plaintiff advances five propositions. His first is that "The trial court erred in sustaining defendant's demurrer to plaintiff's evidence."

Mr. A. F. Richards, defendant's roadmaster, testified that a sun-kink caused the derailment. He further testified that rail anchors were "supposed to be ever so often"; that there weren't many in the area of the derailment; that when the track was repaired after the derailment, additional anchors were not put in but that a little later some were put in; that if a rail is properly anchored there is less chance of sun-kinks.

Mr. Richards further testified that the "stretch of track" here involved "had some new ballast;" "a little ballast put along there, but not quite enough; just typical."

Mr. M. A. McDonald, defendant's general gang foreman, testified that a sun-kink caused the derailment; that the sun-kink occurred on the 100# rail; that there were anchors on the 90# rail but there were not any on the 100#; that the purpose of rail anchoring is to "keep the rail from flowing"; that such would tend to prevent an occurrence of this nature; that "the anchors will stop it from sun kinking because the sun kink will either come up or go out one of the two".

Mr. Floyd L. Owen, defendant's district gang maintenance of ways foreman, testified that a sun-kink caused the derailment; that the rail anchors prevent creepage and rail expansion and are effective to some extent in preventing sun-kinks; that "There is a pattern that is an acceptible pattern, of 12 anchors to each rail."

Mr. Owen further testified of effect that "the less ballast or the less properly its ballasted the more chance for the occurrence of a sunkink".

Mr. George Witt, a maintenance employee of defendant who patrolled the section of rail here involved, testified that there were no rail anchors on the 100# rail; that there were on the 90#; that the 90# rail wasn't molested by the derailment; that it was all on the 100 # rail; that the purpose of the rail anchors is "to keep the rails from crawling and shifting".

Mr. Witt further testified:

"Well, if you've got a weak place or anything like that and no ballast there, it will jump out side ways before it will come straight up, but if there is heavy balast on it, it will raise straight up because you have not got something to hold it down."

Mr. S. E. Flemming, a construction engineer with the Santa Fe Railroad for six years, testified that he had investigated more than forty derailments allegedly due to sun-kinks; that a sun-kink would more fittingly be called "rail expansion or creepage or rail contraction"; that it occurs "when a section of rail moves in one direction or the other, because of various things"; that some of the causes are when you "have a combination of heat with tight joints, loose bars, failure to have adequate rail anchors, or no rail anchors, loose spikes". He was asked the following hypothetical question: "Assuming the following facts to be true; that defendant's track * * * was originally laid with 90# rail in 1918, containing approximately 8 to 10 rail anchors on each rail; that in 1943 defendant replaced this 90# rail up to * * * where a derailment occurred, with used 100# rail * * * and that this rail was manufactured in 1926 and 1927; that such 100# rail * * * contained no rail anchors * * * that the temperature was approximately a 100 degrees; that the defendant's train consisted of the engine and 31 cars travelling at a speed of 45 miles per hour * * * that

while proceeding at the aforementioned speed the rear 4 cars of the defendant's train derailed; that at the point where the derailment commenced that it was noted after the derailment that the 100# rails were kinked and broken loose from the ties but no damage was noted to the 90# rail * * * do you have an opinion concerning the cause of such derailment?" Mr. Flemming answered that he did and when requested to give that opinion he stated: "I am of the opinion that it would be improper track maintenance and inadequate inspection". In explaining his answer Mr. Flemming testified that "you mention the fact that a section of rail is anchored with 8 to 10 anchors to the rail and then you have another section that isn't anchored, and that both sections of this track is quite old, this track was laid in several years ago you indicated in your question, it would indicate that the expansion or creepage in the 100# rail simply moved up to the 90# rail where it was properly anchored and there is where it gave way."

Plaintiff contends "that the logical inference from this testimony is that the defendant's failure to use rail anchors in 100# sections of the rail constituted negligence which was the proximate cause of this derailment."

Defendant argues "that while plaintiff's evidence completely explained the nature and cause of the accident, as well as all of defendant's activities with regard to the construction and maintenance of its tracks, there was no positive inference of negligence and nothing but the wildest type of speculation of negligence which could possibly be presented to the jury". We do not agree. In its brief defendant sets forth 7 items of evidence it claims "plaintiff neglected to mention". These are of effect that sun-kinks are caused by heat, that such can not be discovered by inspection and are a problem to all railroads. Such evidence was favorable to defendant, but when it demurred to plaintiff's evidence, such evidence (favorable to defendant) should have been disregarded by the trial

court for the purpose of ruling on the demurrer.

■ In the first paragraph of the syllabus in the case of Thompson v. Irvin, Okl., 362 P.2d 460, we held:

"On a demurrer to the evidence, all evidence that is favorable to the demurring party is withdrawn from the consideration of the court, and the remaining testimony, with all reasonable inferences that may be drawn therefrom, should be considered by the court in determining the sufficiency of the evidence to withstand the demurrer."

In the case of Bush v. Middleton, Okl., 340 P.2d 474, in the fourth paragraph of the syllabus we held:

"In passing upon a demurrer to the evidence, the court does not weigh the evidence. The demurrer admits every fact which the evidence in the slightest degree tends to prove, and all inferences and conclusions that may be reasonably and logically drawn from the same, and, where there is any conflict in the plaintiff's evidence that would make any part of it unfavorable to plaintiff, or sustains the defense, the court, in passing upon such demurrer, should consider such evidence withdrawn."

Defendant further argues that "The Court must review the entire record in order to see the complete absence of any proof of such things as the lack of proper ballast, loose spikes, frozen joints, insufficient spacing, mislocated switches, curves, etc". From portions of the testimony to which reference has been made hereinabove, it is to be noted that there was testimony of effect that there was insufficient ballast to keep the rails in place in the event of tendency to sun-kink.

In connection with defendant's argument to which reference was last above made, it is to be further noted that in such list defendant does not include "lack of rail anchors". Plaintiff's evidence was of effect that there were no rail anchors affixed to

the 100# rails and that the sun-kink occurred on such 100# rails; that rail anchors were affixed to the 90# rails adjoining the 100# rails at the site of the sun-kink and that such anchored 90# rails did not kink.

In the case of Smittle v. Illingsworth, Okl., 373 P.2d 78, in the second paragraph of the syllabus, we held:

"The essential elements of a cause of action based on negligence may be inferred from all the facts and circumstances, and where the circumstances are such as to remove the case from the realm of conjecture and place it within the sphere of legitimate and rational inferences from established facts, a prima facie case is made."

"We have also held that unless the trial court, on the basis of plaintiff's evidence, can correctly say that all reasonable men would agree defendant was not negligent, or that defendant's negligence was not the proximate cause of the injuries, the cause should be submitted to a jury. Missouri-Kansas-Texas Railroad Company v. Jones, Okl., 354 P.2d 415 [a Federal Employer's Liability case]; Carter Oil Co. v. Johnston, supra [208 Okl. 564, 257 P.2d 817]; and Yellow Transit Freight Lines [Inc.] v. Allred, supra [Okl., 302 P.2d 985]." Lawson v. Lee Eller Ford, Inc., Okl., 375 P.2d 913, 916.

In the case of Martin v. Farmers Cooperative Exchange, Okl., 368 P.2d 1012, in the second paragraph of the syllabus, we held:

"Where there is competent evidence on the question of negligence from which reasonable men might draw different conclusions, the question of negligence is one for the jury, and the question of the proximate cause of an injury, under like circumstances, must be left to the jury."

■ Upon careful consideration of plaintiff's evidence under the principles of law hereinabove set forth, we hold that the plaintiff's evidence was sufficient to withstand defendant's demurrer; and that the

trial court was in error in sustaining such demurrer, entering judgment for defendant and overruling plaintiff's motion for a new trial. The cause is, therefore, reversed and remanded with directions to set aside the judgment of the trial court and its order overruling plaintiff's motion for a new trial and to grant plaintiff a new trial.

Reversed and remanded with directions to grant a new trial.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.