**AMERICAN SMELTING & REFINING COMPANY, Appellant,**

v.

**William O. RIDGWAY, doing business as Ridgway Company et al., Appellees.**

No. 14981.

Court of Civil Appeals of Texas.

Houston.

Feb. 9, 1967.

Rehearing Denied March 9, 1967.

Huggins, Vickery & McConnell, Harley W. McConnell, Houston, for appellant.

Kucera, Lay & Lightfoot, Bennett Lay Houston, for appellees.

WERLEIN, Justice.

This suit was brought upon a sworn account by appellant, American Smelting & Refining Company, sometimes referred to as Federated Metals, the latter being a division of American Smelting & Refining Company, against William O. Ridgway, doing business as The Ridgway Company, and The Ridgway Company, a corporation. After the suit was filed, but before trial, appellee, William O. Ridgway, was adjudged to be of unsound mind, and appellee, William O. Ridgway, Jr., was appointed guardian of his person and estate and made a party to the suit. The case was tried by the court without a jury and judgment was rendered against the corporation and in favor of the appellees, William O. Ridgway, doing business as Ridgway Company, and William O. Ridgway, Jr., his guardian. The parties stipulated that there was due and owing on the open account the sum of $3,507.34, and the only question to be determined was the individual liability of appellee, William O. Ridgway, on such account. The only issue before us is whether the court properly denied judgment against William O. Ridgway and William O. Ridgway, Jr. as the guardian of his person and estate.

At the request of appellant the court made findings of fact and conclusions of law. Among other findings, the court found that on June 1, 1960 a certificate of incorporation was issued by the Secretary of State of the State of Texas to The Ridgway Company; that prior to the year 1958 and through May 31, 1960, William O. Ridgway did business as a proprietorship under the name of The Ridgway Company and from time to time purchased supplies from American Smelting & Refining Company; that on September 10, 1958, on October 10, 1958, on December 10, 1958, on April 10, 1958, and on May 9, 1959, The Ridgway Company, a proprietorship, issued checks to appellant in various amounts ranging from $3,300.98 to $5,169.73, all of said checks being signed "The Ridgway Co.—SPECIAL ACCOUNT" by W. O. Ridgway; that said checks were all endorsed and negotiated by appellant; that on July 13, 1961, on August 12, 1961, on September 13, 1961, on October 11, 1961, and on September 25, 1962, The Ridgway Company, a corporation, issued checks in various amounts to appellant, all of said checks being signed "The Ridgway Co., Inc." by W. O. Ridgway or "The Ridgway Co., Inc." by W. O. Ridgway, Jr.; that said checks were all endorsed and negotiated by appellant; and that the amount sued for was for merchandise delivered after the incorporation of The Ridgway Company.

The court concluded that the indebtedness sued on was that of The Ridgway Company, a corporation, and not that of William O. Ridgway; and that appellant had notice that The Ridgway Company was a corporation at the time of the deliveries of the goods described in appellant's petition.

Each of the five checks drawn on "The Ridgway Co.—SPECIAL ACCOUNT" by W. O. Ridgway has printed in the left hand ⅞ths inch wide space on the face of the check the following: "The Ridgway Co.—Special Acct. 7608 Jensen Drive OX–4–4791." Each of the five checks issued after 1960 has printed in such space the following: "The Ridgway Co., Inc., 7608 Jensen Dr. [16] OX–4–4791." All of said checks were stamped "For Deposit in the National Bank of Commerce of Houston, Texas, Federated Metals Division American Smelting and Refining Co." There is no evidence as to who stamped the checks for deposit.

Appellant asserts that the trial court erred in rendering judgment that it take nothing from appellee because The Ridgway Company was incorporated without a change of firm name and appellee did not show that he complied with the notice provisions of Article 1302–2.02, Vernon's Annotated Texas Statutes. Said article provides in substance that whenever a business firm desires to be incorporated without a change of firm name, such firm shall, in addition to the notice of dissolution required at common law, give notice of such intention to be-

come incorporated for at least four consecutive weeks in some newspaper published at the seat of State government, and in the county in which such firm has its principal business office, and that "Until such notice has been so published for the full period above-named, no change shall take place in the liability of such firm or the members thereof."

It is not claimed that appellee complied with said article. William O. Ridgway, Jr. testified that he did not know whether his father notified appellant that he had incorporated in 1960, and that the cancelled checks which he found were all the evidence that he had with respect to appellant being notified. Robert A. Colton, General Manager of the Houston plant of appellant, testified that he billed William O. Ridgway, the individual, as The Ridgway Company, from the middle of 1957 until the middle or latter part of 1964, and never changed the style of the account that he carried. He also testified that appellant was never notified by Mr. Ridgway that he had a corporation, and that there was nothing in appellant's file which would reflect that they ever received any notification of such incorporation.

There is no evidence that appellant had actual knowledge of the incorporation of The Ridgway Company. The name of the company was the same after incorporation as it was before. The evidence showed that appellant began dealing with appellee as a proprietorship as early as 1957 and continued to carry the account in the name of The Ridgway Company or Ridgway Company, and made no change in the billing of such company at any time. The invoices and the billing all indicated that appellant had no actual knowledge of appellee's incorporation and confirmed the testimony of appellant's plant manager. Appellee might have concluded from the invoices and billing that appellant understood it was dealing with appellee as a proprietorship.

It is our view that Article 1302–2.02 means exactly what it says. It states in

unmistakably clear language that, "Until such notice has been so published for the full period above-named, no change shall take place in the liability of such firm or the members thereof." Appellee contends that the only purpose of said article was to inform parties dealing with the firm of its incorporation and that since the checks sent to appellant after the incorporation gave notice that appellee had become a corporation, it was not necessary to comply with said article. There might be some merit in appellee's contention if appellant had actual or express knowledge of the incorporation, since in such event it might be presumed that it was intending to contract with and sell the goods in question to the corporation. But such was not the case. There was never any change in the course of dealing. The material presumably ordered by appellee by telephone in 1964 was picked up from time to time by appellee's truck as shown by the invoices which also showed "Sold to Ridgway Company".

 It cannot be said that the five checks delivered to appellant after the incorporation conveyed actual or express knowledge of the incorporation to appellant. There is a difference between actual knowledge and notice which might impose upon one the duty of making a reasonably diligent inquiry which might result in actual knowledge. Woodward v. Ortiz, 1951, 150 Tex. 75, 237 S.W.2d 286. See also American Surety Co. of New York v. Bache, 82 S.W. 2d 181, Tex.Civ.App.1935, writ ref. Four of the checks issued after the incorporation were issued in 1961 and the last check issued is dated September 25, 1962. The indebtedness for which recovery was sought grew out of the sale and delivery of goods to Ridgway Company in the year 1964. The fact that such checks bore the signature "The Ridgway Co., Inc." was not sufficient to establish that the corporation was purchasing goods from appellant two or three years later or previously. As hereinabove stated, there was no change in the firm name, although "Inc." was added to the firm name on the checks in place of the

words "—Special Account" previously printed thereon. It was not shown that any responsible official had ever seen any of the checks which apparently were routinely stamped for deposit on the reverse side thereof. It was not shown that such checks were not used to pay for goods purchased by appellee under some arrangement between him and the corporation.

In Spolane v. Coy, 153 S.W.2d 672, Tex. Civ.App.1941, N.W.H., the defendant had been conducting his business under the name of Sterling Radio Products Company. Such company was incorporated under the same name on February 15, 1940. On June 13, 1940, a person working for Sterling Radio Products Company converted some property of the plaintiff who sued the defendant individually for the conversion. The defendant contended that he was not individually liable for the acts of an employee of Sterling Radio Products Company, a corporation. Although the conversion was after the date of the incorporation, the court affirmed the judgment against the defendant individually on the basis of Article 1307, V.A.T.S., from which Article 1302–2.02 is derived without change. The court said: "In the absence of a showing in this record that appellant complied with the provisions of said Article 1307, appellant was personally liable for the act of his agent, Mr. Bennett, acting within the scope of his authority, as found by the trial court."

In Hobbs v. Triangle Supply Company, 378 S.W.2d 726, Tex.Civ.App.1964, n. w. h., the defendants were engaged in business as a partnership under the name of Hobbs Drilling Company. They attempted to escape liability by showing the incorporation of Hobbs Drilling Company under the name of Hobbs Drilling Company, Inc. The court said:

"Appellants offered no proof and introduced no evidence showing publication of notice in a newspaper or to show that plaintiff had been notified or informed in any way of the corporation which they had organized prior to the time the material was furnished and the indebtedness here in question came into being. Actually the language of the statute requires publication of such notice in a newspaper as a prerequisite to a release of the firm members. In this state of the record we are unable to see that any issue of fact was presented as to the individual liability of appellants. The court did not err in rendering judgment against them."

So, in the instant case there is no evidence showing publication of the required statutory notice, nor is there any evidence to show that appellant had been notified or informed of the incorporation of appellee. Appellee asserts that appellant was notified of the incorporation by the checks hereinabove discussed. We do not agree. The checks did not convey actual knowledge or information to appellant of the incorporation of appellee, nor did they relieve appellee of the duty of publishing the statutory notice. Furthermore, it is our view that the mere receipt and deposit of the checks did not impose upon appellant the duty of making any inquiry. In First National Bank in Dalhart v. Flack, Tex.Civ.App., 222 S.W. 2d 455, the court said: "It is a general rule that whatever puts a party on inquiry amounts in law to notice, *provided the inquiry becomes a duty*, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding." (Emphasis added) See also 66 C.J.S. Notice § 11(b), p. 646. In the instant case appellant was under no duty to make an inquiry to determine whether appellee was still operating as a proprietorship or had been incorporated. Appellant was selling and delivering the goods to The Ridgway Company and invoicing and billing them as it had always done, and appellee was bound to know of such invoicing and billing. It would have been a simple matter for appellee to have complied with the statutory notice or to have written a letter or otherwise conveyed to appellant express knowledge of the incorporation.

The record shows that appellant understood that it was dealing with appellee as

an individual. If appellee in dealing with appellant was in fact representing the corporation instead of himself, he failed to disclose such fact to appellant and therefore became liable to appellant. In Anderson v. Smith, 398 S.W.2d 635, Tex.Civ.App.1965, n. w. h., the plaintiff sued defendant, Hal Anderson, individually, for services rendered. The defendant contended that the indebtedness was owing by Hal Anderson, Inc., a corporation. The defendant further contended that plaintiff was placed upon notice of the incorporation based upon the fact that plaintiff had received some three checks drawn by Hal Anderson, Inc. The court held that payment by such checks did not constitute notice that the defendant was merely acting as an agent for the corporation. In the Anderson case the court quoted a statement made in Saco Dairy Co. v. Norton, 140 Me. 204, 35 A.2d 857, 150 A.L.R. 299, as follows: "It might well be that the check was received in such routine manner that it had little or no significance on the question of knowledge of the plaintiff."

We have carefully considered the case of Comstock v. Wood, 204 Iowa 1027, 216 N. W. 640, relied upon by appellant. That case is factually distinguishable from the instant case. In that case there was a substantial compliance with the statute and the appellant had actual notice of the form in which the capital was paid and had participated as an appraiser in connection therewith.

That part of the judgment of the Trial Court which decrees that appellant recover against Ridgway Company, a corporation, from which no appeal has been taken, will remain undisturbed. Insofar as the judgment decrees that appellant take nothing as against the appellees individually, the judgment of the Trial Court is reversed and rendered that appellant recover judgment against William O. Ridgway, doing business as Ridgway Company, and William O. Ridgway, Jr., Guardian of the Estate of William O. Ridgway, N. C. M., jointly and severally with the Ridgway Company, a corporation.

Reversed and rendered.

### On Motion for Rehearing

■ Appellee, in his motion for rehearing, asserts in effect that this Court committed fundamental error since it lacked jurisdiction to render judgment against him because there is no evidence that appellant's claim was presented to the guardian and rejected and that suit was commenced within 90 days after the claim was rejected. Appellant pleaded: "That Plaintiff did duly present his claim attached hereto and marked Exhibit 'B' for the above described materials for payment to Defendant, William O. Ridgway, and Defendant William O. Ridgway, Jr., did reject said claim." Appellee's answer contains no general denial nor any special denial of such allegation, which therefore must be taken as true. Bauman v. Chambers, 91 Tex. 108, 41 S.W. 471 (1897); Diaz v. Chinn, 150 S.W.2d 411 (Tex.Civ.App.1941, n. w. h.). In Bauman v. Chambers, our Supreme Court also held that such admitted allegations need not be read in evidence. See also McDonald, Texas Civil Practice, sec. 7.23, p. 645.

■ It was not necessary for appellant to present its claim for attorney's fees to the guardian as required by Section 314, Texas Probate Code, V.A.T.S., since the claim was for an undetermined and uncertain amount. Boykins v. Parr, 327 S.W.2d 463, Tex.Civ. App.1959, writ ref., n. r. e., and authorities there cited.

Rehearing overruled.