MYTINGER v. WALDRIP. (No. 11653.)*

(Court of Civil Appeals of Texas. Fort Worth. Dec. 4, 1926. Rehearing Denied Jan. 15, 1927.)

1. Statutes ⬅️111 — Provision of "Assumed Name Act" that one withdrawing without filing certificate is liable for debts of business held valid, though not included in caption (Const. art. 3, § 35).

Provision in "Assumed Name Act" (Laws 1921, p. 142), that one doing business under assumed name is liable for debts of business after withdrawal unless he files certificate with county clerk, *held* not to contravene Const. art. 3, § 35, though not included in title of caption, since it merely states means of enforcing general purposes of act.

2. Partnership ⬅️64—One withdrawing from business operating under "Assumed Name Act" without filing certificate is not liable for torts of business; "debts."

One withdrawing from business operating under "Assumed Name Act" (Laws 1921, p. 142), without filing certificate with county clerk, is not liable for torts of business and its agents, notwithstanding provision that he is liable for its debts, since "debts" do not include tort liability (citing Words and Phrases, Second Series, "Debt").

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Carrie Waldrip against J. C. Mytinger, doing business under the firm name of the J. C. Mytinger Grain Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellant.

Davenport & Crain and Cummings & Wiech, all of Wichita Falls, for appellee.

BUCK, J. Miss Carrie Waldrip, a feme sole, filed suit against J. C. Mytinger, doing business under the firm name of J. C. Mytinger Grain Company, alleging injury. She alleged that the defendant owned and operated a milling plant and grain elevator in the city of Wichita Falls, Tex., adjacent to the right of way of the Fort Worth & Denver City Railway Company. That she was in the employ of Carroll, Brought, Robertson & Gates Grocery Company, whose place of business was immediately north of the defendant's switch track. That she and the other employees of said last named company were accustomed, with the consent of the defendant, to use the passage across said switch track and had thereby become invitees in the use of said passageway. That the defendant used a cable stretched along the track, with one end attached to a power plant inside of the building and the other end attached to cars on the track, to be moved near and up to the building. That while the plaintiff was crossing the track on February 15, 1923, and as she was stepping over the rail and cable lying adjacent thereto and on the ground. the employees of the defendant, operating the power plant, tightened said cable, and caused it to be raised above the ground and strike her on the legs, and seriously and permanently injured her.

Suit was filed on February 19, 1924. The defendant on March 3, 1924, answered by a general demurrer and a general denial. On February 11, 1925, within two years after the alleged date of the accident, the defendant filed his first amended answer, in which among other pleas, he denied that he was doing business under the firm name of J. C. Mytinger Grain Company in the year 1923, which plea was verified. The evidence showed that the accident really occurred on April 20, 1923, and further showed that on July 7, 1921, the milling plant was operated under the name of J. C. Mytinger Grain Company, and at that time J. C. Mytinger was the sole owner, and on that date he filed a certificate, under the "Assumed Name Act" (Laws 1921, p. 142), in the county clerk's office. It was admitted in evidence that after June 6, 1922, J. C. Mytinger was never, at any time, the owner of the J. C. Mytinger Grain Company. The evidence further showed that J. C. Mytinger did not file in the office of the county clerk a certificate, under article 5950½b, Vernon's Texas Civil Statutes 1922 Supplement, which is as follows:

"Whenever there is a change in ownership of any business operated under any such assumed name as set out in section 1 hereof [art. 5950½], the person or persons withdrawing from said business or disposing of their interest therein, shall file in the office of the clerk of the county or counties in which such business · is being conducted and has a place or places of business, a certificate setting forth the fact of such withdrawal from or disposition of interest in such business; and until he has filed such certificate he shall remain liable for all debts incurred in the operation of said business, which certificate shall be executed and duly acknowledged by the person or persons so withdrawing from or selling their interest in said business in the manner now provided for acknowledgment of conveyance of real estate."

The plaintiff did not, upon the filing of the defendant's plea that he did not own the J. C. Mytinger milling business at any time during 1923, file any further pleadings, seeking to make the corporation a party defendant, but

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 23, 1927.

relied on a plea of estoppel, based on article 5950½b, above quoted.

A trial was had on special issues, and the jury found that the plaintiff and other employees of the Carroll, Brought, Robertson & Gates Grocery Company used a pathway across the switch track of the J. C. Mytinger Grain Company or the Mytinger Milling & Grain Company, for the purpose of going to and from their work; that such use was with the knowledge and acquiescence of the J. C. Mytinger Grain Company or the Mytinger Milling & Grain Company, its agents, and employees; that the agents and employees of the J. C. Mytinger Grain Company or the Mytinger Milling & Grain Company caused a wire rope or cable to be suddenly moved while the plaintiff was crossing over the same on her way to her place of employment, and that thereby plaintiff was injured; that such moving of the wire cable was negligence on the part of the employees and was the proximate cause of the injury to plaintiff; that they did not warn plaintiff just before the moving of the cable that they were going to move it, and that such failure was negligence; that plaintiff's damage, by reason of said injury, was $2,250. The jury further answered that by the use of ordinary diligence plaintiff could have seen the cable in question at the time she attempted to step over the same, but that she was not guilty of contributory negligence in failing to see or observe the cable; that plaintiff was not watching or looking to see for what purpose the cable was being put to while going along said premises, but that she was not guilty of contributory negligence in so failing to watch and look.

Upon this verdict the court entered judgment for plaintiff in the sum of $2,250, with interest and costs of suit. From this judgment the defendant has appealed.

### Opinion.

The "Assumed Name Act" was passed in 1921, and became effective 90 days after the date of adjournment, to wit, March 12, 1921. Said act, as amended in the 1925 Civil Code, being articles 5924 to 5927, inclusive, does not include the provision in the original act (section 3):

"And until he has filed such certificate he shall remain liable for all debts incurred in the operation of said business," etc.

Appellant urges that the "Assumed Name" statute has no application to this case, for the reason that the undisputed evidence shows that appellant never at any time did business under an assumed name; that he used his initials and his surname in the conduct of his business, with the addition of the word "Company."

Section 1 of our Statutes reads as follows:

"No person or persons shall hereafter carry on or conduct or transact business in this state under any assumed name or under any designation, name, style, corporate or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business unless such person or persons shall file in the office of the clerk of the county or counties in which such person or persons conduct, or transact or intend to conduct or transact such business, a certificate setting forth the name under which such business is or is to be conducted or transacted, and the true or real full name or names of the person or persons conducting or transacting the same, with the post office address or the addresses of said person or persons."

The Supreme Court of Washington held that the full, true, and real name of the owner of the business appeared in the designation "George W. Merrill Automobile Company." See Merrill v. Caro Investment Co., 70 Wash. 482, 127 P. 122. The Washington Act (Rem. Comp. Stat. § 9979) provides as follows:

"Nor shall this chapter be deemed or construed to prevent the lawful use of a partnership designation, name or style: Provided, that such partnership designation, name or style shall include the true and real name or names of all of the parties conducting such business or having an interest therein."

Our act does not contain any provision to this effect, and appellee urges that by reason of the difference between the two acts the Washington case is not pertinent. Some of us are of the opinion that the decision in the Washington case is pertinent, in spite of the difference in the statutes, though we do not decide the case on this ground. The Supreme Court of Michigan, in Zemon v. Trim, 181 Mich. 130, 147 N. W. 540, construed a statute very similar to ours, in which it said:

"It cannot be said David S. Zemon is an assumed or fictitious name, nor can that term be applied to David S. Zemon & Co. * * * In our opinion the name here used was not 'an assumed or fictitious name,' within the meaning of the act."

The Supreme Court of New York in the case of Black v. New York Life Insurance Co., 70 Misc. Rep. 532, 127 N. Y. S. 409, held that one Henry M. Black, doing business as H. M. Black & Company, was not required by the Assumed Name Statute of the state of New York to file a certificate. See Consol. Laws N. Y. c. 39, § 82. See Jenner v. Shope, 67 Misc. Rep. 159, 121 N. Y. S. 599; Commonwealth v. Richey, 171 Ky. 330, 188 S. W. 397, L. R. A. 1917B, 697; Carland v. Heckler, 233 F. 504 (C. C. A. Sixth Circuit); Missaukee Farm & Investment Co. v. Ferris, 193 Mich 286, 159 N. W. 490; Befarah v. Spell, 176 N. C. 193, 96 S. E. 949. See, especially, Canonica v. St. George, by the Supreme Court of Montana, 64 Mont. 200, 208 P. 607.

The caption of the act under discussion is as follows:

"An Act forbidding transactions of business in Texas under an assumed name other than

the real name or names of the individuals conducting such business, unless such individuals file in the office of the clerk of the county where such business is to be conducted a certificate containing the names and addresses of such persons; providing for the keeping of special record of such certificates by the county clerks of the state, providing for a filing fee to be paid the county clerk for filing such certificates, making it a misdemeanor not to comply with the provisions of this act, and fixing a penalty for such failure, and declaring an emergency."

[1] Appellant urges that there is no reference in the caption to the provision of the act that, until one, doing business under an assumed name, has filed a certificate in the office of the county clerk that he has withdrawn from the business, or has ceased to do business under such said assumed name, he shall be held liable for all debts incurred in the operation of said business. That such provision is penal in its purport and an important part of the act, and a failure to include it in the caption renders that part of the act unconstitutional. See article 3, § 35, state Constitution. We are of the opinion that this assignment should be overruled. It is our judgment that the provision under discussion is merely a means of enforcing the general purposes of the act, and that it is not essential to the validity of this provision that it should be included in the title of the caption. As was said in Tadlock v. Eccles, 20 Tex. 792, 73 Am. Dec. 213, "The word 'object'" was not intended "in the sense of 'provision;'" this "would render the title of the act as long as the act itself." In the application of this provision of the Constitution the most liberal construction has been given to make the whole law constitutional, where the part objected to as infringing this provision could be considered as appropriately connected with or subsidiary to the main object of the act as expressed in the title. Giddings v. San Antonio, 47 Tex. 556, 26 Am. Rep. 321; Gunter v. Mortgage Co., 82 Tex. 502, 17 S. W. 840. The word "object," as used in former Constitutions, means more nearly the same as "end" or "purpose" than does the word "subject." Day Co. v. State, 68 Tex. 527, 4 S. W. 865. Only the general or ultimate object is required to be stated in the title, and not the details by which the object is to be attained. Any provision calculated to carry the declared object into effect is admissible. Johnson v. Martin, 75 Tex. 40, 12 S. W. 321; Doeppenschmidt v. Ry. Co., 100 Tex. 535, 101 S. W. 1080.

[2] It is urged in one of appellant's assignments that, in no event, could he be liable personally for a tort committed by the servants of a corporation, which corporation was organized nearly a year before the commission of the tort. The jury found that the injury to the plaintiff below was committed through the negligence of the agents and servants of the corporation, and the trial court in his findings found to the same effect. It will be noted that the act, in section 3 thereof (General Laws of Texas, 37th Leg. 1921, p. 142), limits the liability of one doing business under an assumed name, and who has failed to file a certificate of his withdrawal from the business, to "all debts incurred in the operation of said business." It was evidently the intention of the Legislature by the Assumed Name Act to require persons engaging in business under an assumed name to file a certificate disclosing the real names of the partners in the business, or the real name of the individual person, in order to furnish those extending credit to the business with such information. This purpose is shown in section 7, which is the emergency clause, of the act, which provides in part:

"The fact that there is now no law providing for the registration of the names of persons doing business under assumed or fictitious names, and that the absence of such law impairs the stability of credits in the state," etc.

The Legislature by this provision evidently intended to protect those who extended credit to the business, relying upon the financial worth of one of its partners by giving them the right to hold the withdrawing individual liable for his failure to file a withdrawal certificate. We do not think that the Legislature's intent was merely to impose an additional punishment upon such individual by making him liable for all claims and demands and causes of action, regardless of whether the failure to file a certificate induced or contributed to the liability or not. In the case of Esmond v. Bullard, 16 Hun (N. Y.) 65, 68, the court held that the word "debt," as used in Laws 1848, c. 40, § 12, providing that the trustees of a manufacturing corporation should in certain cases be liable for all the debts of the company then existing and for all that should be contracted, did not include the liability for a tort. The Supreme Court of Nebraska, in the case of Doolittle v. Marsh, 11 Neb. 243, 9 N. W. 54, held that the word "debt," as used in corporation statutes requiring corporations to publish annually a true statement of the existing debts of the corporation, meant only those obligations arising on express and implied contracts, where the financial condition of the corporation would or might be the foundation of credit, and would not include damages for tort.

The Supreme Court of Massachusetts, in the case of Savage v. Shaw, 195 Mass. 571, 81 N. E. 303, 122 Am. St. Rep. 272, 12 Ann. Cas. 806, held that a judgment against the street railway company, in an action for tort for injuries received by plaintiff while a passenger on a car, was not a debt for which the directors of a street railway company were made jointly and severally liable to the extent of its capital stock for all "debts and

contracts" until the whole amount of such capital stock should have been paid in and a certificate filed. The court said:

"The natural import of the language of the statute is that it contemplates ordinary debts or obligations voluntarily contracted by the corporation rather than involuntary obligations imposed upon it by law in consequence of the negligent or tortious acts of its agents or servants."

In the case of Shapard v. Hynes, 104 F. 449, 45 C. C. A. 271, 52 L. R. A. 675, it was held that one cannot be made liable as a partner for tortious acts of his former copartner on the ground of estoppel, because of failure to give notice of the dissolution of the partnership. We think that part of the act under consideration is but a statutory enactment of the principle of estoppel. Bigelow on Estoppel (1913 Ed.) says:

"The doctrine has well been referred to estoppel by conduct that where one intentionally or negligently holds oneself out or permits another to hold one out as a partner of a firm, contrary to the fact, or perhaps where late partners continue to do business in the firm name after dissolution, or where a firm after having sold out their business to another suffer the purchaser to continue the business in the firm name, without anything to indicate the change, and the representation has been innocently acted upon by others without knowledge or notice of the truth of the matter, such party or parties will be held liable to such persons, and to such only."

The word "debt" is defined in Black's Law Dictionary (2d Ed.) as:

"A sum of money due by certain and express agreement; as by bond for a determinate sum, a bill or note, a special bargain, or a rent reserved on a lease, where the amount is fixed and specific, and does not depend upon any subsequent valuation to settle it"; also, "A sum of money due by contract. It is most frequently due by a certain and express agreement, which fixes the amount, independent of extrinsic circumstances. But it is not essential that the contract should be express, or that it should fix the precise amount to be paid."

In United States v. Colt, Pet. C. C. 145, Fed. Cas. No. 14,839, it is said that "debt" has been differently defined, owing to the different subject-matter of the statutes in which it has been used. Ordinarily, it imports a sum of money arising upon a contract, express or implied. In its more general sense, it is defined to be that which is due from one person to another, whether money, goods, or services; that which one person is bound to pay or perform to another. And a debt is a legal liability to pay a specific sum of money. See 1 Words and Phrases, Second Series, 1226, and following, and especially pages 1232, 1233, for further definitions for the word "debt."

But appellee urges that in this state the courts have held that the liability for tort is a debt, within the meaning of section 3 of this act. He cites the cases of Cole v. Terrell, 71 Tex. 549, 9 S. W. 668, and Robertson v. Hefley, 55 Tex. Civ. App. 368, 118 S. W. 1159, the latter by the Court of Civil Appeals at Austin. In the case of Cole v. Terrell, supra, a judgment had been obtained by the plaintiff against Thomas A. Wilson. Then the plaintiff sought to subject to the payment of this judgment, which was evidently a debt, property which had theretofore been conveyed by Wilson, first to his wife, and then by him and his wife to the mother of Mrs. Wilson, both conveyances being without consideration. The plaintiff sought to set aside these conveyances as being fraudulent. It is true that the original cause of action against Wilson was for a tort, but a judgment having been obtained, the further effort to subject property, alleged to have been fraudulently conveyed by the judgment debtor to the payment of the judgment, was an action based upon a debt. We think this case is, easily distinguishable from the other cases we have cited supporting our conclusion.

In Robertson v. Hefley, supra, plaintiff Hefley was seeking, in a suit of trespass to try title, to recover certain lands alleged to have been conveyed to him by Robertson during his lifetime, without the joinder of his wife, but which the wife contended was the homestead of her former husband and her at the time of the conveyance and the deed to which she sought to set aside. In the course of this opinion, Chief Justice Fisher, speaking for the court, said:

"When the debtor conveys with the purpose of defrauding his creditors, the conveyance, though voidable as to the latter, is conclusive and binding between the former and his vendee. Rivera v. White [94 Tex. 538, 63 S. W. 125], supra. One having a valid claim and demand for unliquidated damages may be a creditor entitled to such protection. 2 Bigelow on Frauds, p. 148; Holden v. McLaury, 60 Tex. 228; Cole v. Terrell, 71 Tex. 550, 9 S. W. 668."

As before noted, the Cole v. Terrell Case does not support the contention that the word "debt" means a claim for damages by reason of a tort. In the Holden v. McLaury Case, cited in Robertson v. Hefley, it was held that suit might be maintained to cancel and declare void for fraud a conveyance to the defendant by a third party, against whom the plaintiff had obtained a judgment for damages, the land having been sold under that judgment to the plaintiff, and the petition charging that the defendant knew of the fraudulent intent of such third party to defraud plaintiff of his claim for damages by the conveyance and colluded with him to consummate the fraud. In other words, the cited case merely held that the plaintiff in that case had the right to have canceled and held for naught a conveyance made

by his judgment debtor and in collusion with the vendee in said conveyance, in order to satisfy his judgment. We do not see that either of the cited cases in Robertson v. Hefley in any way disturbs the holdings in the cases heretofore cited in this opinion. Therefore we sustain this assignment, and reverse the judgment below.

We conclude that J. C. Mytinger personally was not liable for a tort committed by the employees of the corporation, and that the trial court should have so held, and that the special instruction tendered that the jury should find a verdict for the defendant, because the plaintiff had failed to make out a case against him, should have been given. We see no legal right or advantage to the plaintiff below that would be subserved by our reversing the judgment and remanding the cause. If she has any cause of action, it is against the corporation. She can still sue the corporation, subject to any pleas and defenses that said corporation might make. Therefore the judgment below is reversed, and judgment here rendered that plaintiff take nothing and that defendant have judgment for the costs of suit.