L. Cletus BROWN, Jr., et al., Appellants,

v.

Jack B. COX et al., Appellees.

No. 393.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Sept. 16, 1970.

Rehearing Denied Oct. 14, 1970.

Thomas E. Lucas and G. Robert Friedman, Lucas & Hudson, Houston, C. W. Karisch, Hempstead, for appellants.

Hubert Gentry, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, Richard G. Rorschach, Ragan, Russell & Rorschach Houston, for appellees.

BARRON, Justice.

This suit was filed by Jack B. Cox, Frank C. Dill and Card G. Elliott, d/b/a Dill-Elliott & Associates, plaintiffs, against L. Cletus Brown and wife, Betty Showers Brown, defendants, in the District Court of Waller County. Plaintiffs sought recovery for services allegedly rendered and for attorney's fees in connection with the preparation of plans and specifications for a proposed residence for defendants.

The following is a fair summary of the evidence: In August, 1965, the Browns entered into a written contract with Jack B. Cox and the firm of Dill-Elliott & Associates, architects. The contract, a standard American Institute of Architects form, was an employment contract with Cox and the architect firm to design a residence for use by the Browns on the latters' farm or ranch near Brookshire, Texas. Pursuant to this contract, Jack B. Cox and the firm began work on the plans and specifications. There were many meetings between the architects and the owners. At each of these meetings the plans of Cox and the firm were discussed, and suggestions were made for changes. In November, 1965, the architects billed the Browns for $7,000.00 or 35% of the architects' fee based on an estimated cost of construction at that time of $250,000.00. This bill was promptly paid and the architects continued in their work. Between November, 1965 and April, 1966, Cox and the firm worked on the final drawings and specifications for the Brown residence. Several major changes were made in the proposed residence at the suggestion or request of the Browns which resulted in an increased estimated cost of construction. In April, 1966, final plans and specifications were submitted to Mr. and Mrs. Brown, and subsequently a final bill for the architects' services was submitted, based on the architects' latest statement of the total estimated cost of the work. After several days the Browns notified the architects that the proposed residence was too expensive, and after a conference in an unsuccessful attempt to work out their differences, the Browns refused to pay the amount of the bill remaining unpaid, contending that a maximum construction cost of $250,000.00 had been agreed upon by the parties. Prior to submission of the final statement for services the architects were never directed to cease work under their contract. Plaintiffs offered to revise the

plans and specifications down to the figure of $250,000.00 in construction cost for an additional $2,000.00 fee, but all further negotiations failed and the architects were not paid the remaining portions of their fee. The contract provided for a fee of 8% of project construction cost without supervision of construction. The Brown home was understood by all parties to be an expensive structure and was to be designed as a colonial home.

The trial court submitted nine special issues to the jury, the answers to four of them being conditioned on prior answers. The jury found in response to the special issues that:

(1) There was no understanding between the parties relative to a maximum cost of $250,000.00 for the Brown home at or prior to the execution of the written contract. (Number 1.)

(2) The reasonable estimated cost of constructing the Brown residence according to plans and specifications as of April 6, 1966 was $350,000.00. (Number 5.)

(3) The architects did not fail to provide the Browns with a statement of probable project construction cost at the design-development phase of the agreement. (Number 6.)

(4) The usual, reasonable and customary compensation due the architects for services rendered to the Browns between July 27, 1965, and April 4, 1966 was $28,000.00. (Number 8.)

(5) A reasonable attorney's fee for the prosecution of the action is $7,000.00. (Number 9.)

The trial court rendered judgment on the contract in favor of the architects for $21,000.00 after allowing a credit of $7,-000.00 paid by the Browns, with interest, but on motion of defendants to disregard findings of the jury under Texas Rules of Civil Procedure, Rule 301, the trial court disregarded the jury's finding relative to special issue number 9 above. The court held that this action involved the breach of an express written contract not providing for attorney's fees, and consequently Art. 2226, Vernon's Ann.Civ.St., was inapplicable. The architects have cross-assigned error in connection with attorney's fees. Appeal is by the Browns, defendants in the trial court.

Appellants, Mr. and Mrs. Brown, contend that the trial court erred in overruling their motion for judgment non obstante veredicto, because the evidence conclusively shows that appellees failed to provide them with a statement of probable project construction cost at the design development phase and that such failure resulted in a material breach of the contract; that the jury's answer to special issue number 6 was contrary to and against the greater weight and preponderance of the evidence; and that the jury's answer to special issue number 1 dealing with an agreement as to the maximum cost of $250,000.00 for the residence was against the greater weight and proponderance of the evidence. As noted above, appellees by cross-point of error contend that the trial court erred in disregarding the jury's answer to special issue number 9 dealing with attorney's fees.

The contract provides that appellees "shall submit to the Owner a further statement of Probable Construction Costs." Under Article 8 of the contract, payment to the architect at the completion of the design development phase was to be 35% of the total fee to be due the architect. By statement dated November 3, 1965 appellees invoiced appellants for $7,000.00. This statement was received by appellants and was promptly paid without objection. This invoice for architectural service stated that the basic fee to date was 35% of the total basis architectural fee of $20,000.00 and was tendered at the end of the design development phase. Moreover, such invoice of November 3, 1969 clearly stated that the "Basic Fee for architectural services is based upon a total estimated cost of the work....$250,000.00."

The contract calls for the architects to submit to the owner a statement of probable project construction cost based on current area, volume or other unit costs. The record shows that such statement was based upon a detailed analysis of area, volume and other unit costs. The statement above was not required to be *in* unit costs as contended by appellants. The contract, in fact, provides that the furnishing of semi-detailed or detailed cost estimates should be considered as extra expense to the architects, and in the event such detailed estimates are furnished, extra compensation should be paid the architects. There is no evidence that the owners either authorized or paid for such cost estimates. Moreover, the owners were kept informed at all material times relative to probable cost.

■ The written contract contains no mention of a cost limitation for the construction of the home. The jury found that there was no understanding between appellees and the Browns relative to a maximum cost of $250,000.00 for the residence at or prior to the execution of the written contract. Even if oral testimony concerning such point should be admissible, the finding of the jury is fully supported by the evidence. We overrule all of appellants' points of error. The evidence is sufficient to support the judgment and is not against the overwhelming weight of the testimony.

■ Concerning appellees' cross-point of error complaining of the trial court's holding that the appellee-architects were "not entitled to recover attorneys' fees because their cause of action is for breach of an express contract which does not provide for attorneys' fees and therefore Article 2226 of Vernon's Annotated Civil Statutes of the State of Texas is not applicable," we reverse the ruling of the trial court and render judgment that appellees recover such attorneys' fees as found by the jury. We hold that the alleged error of the trial court regarding attorneys' fees has been properly preserved, and there being no limitation in connection with appellants' appeal from the judgment below, and the trial court having disregarded the controlling special issue submitted to the jury, it is our duty to consider and pass upon the cross-point of error. City of Lamesa v. Hutchinson, 336 S.W.2d 861, 865 (Tex.Civ.App.), writ ref., n. r. e., and authorities cited; Great American Indemnity Company v. Meyer, 285 S.W.2d 276, 279 (Tex.Civ.App.), no writ; Rule 324, T.R.C.P.; 3 Tex.Jur.2d, Sec. 187, p. 461.

■ The Supreme Court has held that a contract for purely personal services or for labor only will support an award of attorney's fees, and this is true whether the contract expressly provides for attorney's fees or not. See Tenneco Oil Company v. Padre Drilling Company, 453 S.W.2d 814 (Tex.Sup.); Shirey v. Albright, 404 S.W.2d 152, 158 (Tex.Civ.App.), writ ref., n. r. e.; Danaho Refining Company v. Dietz, 398 S.W.2d 307, 312 (Tex.Civ.App.), writ ref., n. r. e. And see Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex.Sup.). An architect's direct services to an owner are such "personal services" as are contemplated by Art. 2226, V.A.T.S., and the trial court should have permitted recovery of attorney's fees as proven and as found by the jury under the circumstances. The cross-point of error is sustained.

The judgment of the trial court is affirmed in part and reversed and rendered in part.