**Tom PAYNE d/b/a Tom Payne Co., Appellant,**

v.

**Frank LUCAS d/b/a Auto Compressor & Clutch Exchange et al., Appellees.**

**No. 16356.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 24, 1974.

Rehearing Denied Dec. 5, 1974.

Second Motion Jan. 9, 1975.

Tipton & Bishop, George M. Bishop, Houston, for appellant.

Browne & Moore, John J. Browne, Houston, for appellees.

EVANS, Justice.

The underlying and controlling question in this case is whether a sole proprietor who incorporates his business without changing his company's name becomes individually liable, as a matter of law, for debts subsequently contracted by the corporation unless he publishes statutory notices of intent to become incorporated.

Article 1302–2.02, Vernon's Texas Revised Civil Statutes Annotated, provides as follows:

"A. Whenever any banking, mercantile or other business firm desires to become incorporated without a change of firm name, such firm shall, in addition to the notice of dissolution required at Common Law, give notice of such intention to become incorporated for at least four (4) consecutive weeks in some newspaper published at the seat of State Government, and in the county in which such firm has its principal business office, if there be a newspaper in such county; and, if not, then in some newspaper published in some adjoining county; provided, however, that such notice shall only be published one (1) day in each week during the said four (4) weeks. Until such notice has been so published for the full period above-named, no change shall take place in the liability of such firm or the members thereof."

Frank Lucas operated Auto Compressor & Clutch Exchange as a sole proprietorship until it was incorporated in January, 1967, as Auto Compressor & Clutch Exchange, Inc. Lucas continued to manage the business as its presiding officer and principal stockholder until April, 1969 when Emanuel Goldstein purchased control of the corporation. Mr. Goldstein opened new offices for the corporation at 2005 Polk Street in Houston, Texas but retained the corporate bank account with the East End State Bank.

This suit was brought by Tom Payne, d/b/a Tom Payne Company, against Frank Lucas, Individually and d/b/a Auto Compressor & Clutch Exchange, for the sum of $707.20 and attorney's fees for two typewriters and cases sold on account to Auto Compressor & Clutch Exchange, Inc. Payne subsequently amended, adding Auto Compressor & Clutch Exchange, Inc., a corporation, as party-defendant but served his action against that defendant prior to trial.

The jury found that the typewriters had been delivered to the corporation at its Polk Street address on June 10, 1969, and that their value was in the amount alleged. It did not find that Lucas had advertised his intent to incorporate in a newspaper in Harris and Travis Counties, Texas. The jury also found that the reasonable value of plaintiff's attorney's fees was the sum of $2150.00; however, the trial court disregarded the jury's response to that issue, finding there was no evidence to support it, and entered judgment for Payne in the amount found to be the value of the typewriters.

In seven points of error Payne contends the trial court erred in refusing to award attorney's fees under the provisions of Article 2226, Texas Revised Civil Statutes Annotated. In one cross-point, Lucas complains the trial court erred in entering judgment for Payne under Article 1302–2.02, Tex.Rev.Civ.Stat.Ann., contending that such article applies only to a "firm" which had incorporated and not to a sole proprietorship.

It is our opinion that the principle question is whether there is evidence that Payne extended credit on the belief that he was dealing with Lucas individually and not with a corporate entity.

Payne testified that on June 10, 1969, his office received a telephone call from Auto Compressor & Clutch Exchange, Inc. for the two new typewriters. Since the sale was to be made on credit and Payne did not have credit information, he investigated the company by calling the East End State Bank and the Southwestern Bell Telephone Company credit division. Payne

testified he had never done business with Auto Compressor & Clutch Exchange, Inc. prior to this transaction and that he had never done any business with them afterward. Payne said that in making credit inquiry, he was not told by anybody that the company was a corporation and that he never asked whether it was or not.

Payne testified he was asked to deliver the typewriters to the corporation's Polk Street address which was represented to be its sales office. He said that he asked to talk to Mr. Goldstein and was advised that Mr. Goldstein was in a meeting "in the corporation office". Upon being so advised he said he replied that he was not going to leave the typewriters until he talked with Goldstein; that becoming a bit anxious, he scratched through the word "Charge" on the delivery receipt and wrote in the word "Trial" and advised Goldstein's office that the only way he would leave the typewriters was on a trial basis. Payne further testified that he was then able to talk to Goldstein who advised him that the main office of the company was on Harrisburg and that the Polk Street address was its sales office and he, Goldstein, was its manager.

At the time Payne extended credit to Auto Compressor & Clutch Exchange, Inc., it had been incorporated for approximately two years. Lucas testified that the incorporation procedures had been handled by his company's bookkeeper and that he did not know whether the statutory notices of intent to incorporate had been published.

It is clear from the record that Payne had no prior dealings with Lucas or with his business, and he testified he had never met Mr. Lucas and had never heard of him before delivering the typewriters. The evidence does tend to show that Payne believed the main office of the company to be located at the company's prior address on Harrisburg, and there is some indication that Payne may have obtained credit information on Lucas. However, there is no evidence that he extended credit in reliance upon the belief that he was dealing with Lucas individually or that Lucas would be personally responsible for the corporate debt. As found by the jury, the evidence shows that the goods were delivered to the corporation at its corporate address on Polk Street and that the debt was contracted for with the corporate entity. We find no evidence that Lucas received any of the goods. The question, then, is whether Lucas may be subjected to personal liability for the debt of the corporation, as a matter of law, upon his failure to produce affirmative evidence showing compliance with the publication requirements of Article 1302–2.02, Tex.Rev.Civ.Stat.Ann.

We have been referred to four cases wherein individual liability has been based upon non-compliance with Article 1302–2.02, Tex.Rev.Civ.Stat.Ann.

In Spolane v. Coy, 153 S.W.2d 672 (Tex. Civ.App.—Galveston 1941, no writ), a sound system purchased by plaintiff from Sterling Radio Products Company was removed by a company agent from plaintiff's place of business during her absence. Spolane had incorporated Sterling Radio Products Company earlier that year but had not withdrawn the assumed name certificate under which he had operated the business under the same name, as required by Article 5925, Tex.Rev.Civ.Stat. Ann., and had not filed statutory notices of intent to incorporate it as required by Article 1302–2.02. The court held that Spolane was personally liable for the agent's act in the absence of showing he had complied with the statute.

In Hobbs v. Triangle Supply Company, 378 S.W.2d 726 (Tex.Civ.App.—Eastland 1964, no writ), Roy and William Hobbs, partners doing business under the name of Hobbs Drilling Company had been supplied materials by the plaintiffs. In December, 1961 they incorporated under the same name and the plaintiffs continued to extend credit to the defendants as individuals and partners without notice of the incorporation. The court held the defendants indi-

vidually liable upon their admission that they had not published notices as required by the provisions of Article 1302–2.02.

In American Smelting & Refining Company v. Ridgway, 412 S.W.2d 675 (Tex. Civ.App.—Houston 1967, writ ref. n. r. e.), Ridgway, a proprietorship doing business under the name "The Ridgway Company" had been supplied materials by the plaintiff. In June, 1960 he incorporated, using the same name. The supplier's invoices and billing documents indicated it had no actual knowledge of Ridgway's incorporation and that it had continued to make sales and billing to Ridgway as in the past. The court held that the supplier was under no duty to make inquiry to determine whether Ridgway was still operating as an individual or whether it had been incorporated, and that five checks bearing the name "The Ridgway Company, Inc." given in payment of supplies over a period of several years did not, under the circumstances, constitute notification of incorporation.

In Gay Harris & Son, Inc. v. E. H. Schlather and Sons, 423 S.W.2d 467 (Tex. Civ.App.—Austin 1968, no writ), Gay Harris and his son Don had operated a feed store under the name "Gay Harris and Son," as a partnership, until they incorporated using the same name. The court held the partners individually liable for failure to comply with Article 1302–2.02, concluding that the use of the letters "Inc." after the company's name on its supply truck and on one of its checks given in payment on the account did not establish actual notice of incorporation. Justice Hughes concurred on the ground that the failure to comply with the statute fixed liability as a matter of law.

Of the four cases discussed, Ridgway, Hobbs and Harris involved in the extension of credit. In Ridgway and Hobbs, the suppliers extended credit based upon a prior course of dealing and without notice or knowledge of the incorporation. In Harris, the supplier was apparently led to believe he was dealing with a father and son part-

nership operating under the name "Gay Harris and Son" and extended credit on that basis. In all three cases the opinions of the majority indicate that personal liability might not have attached if the creditor had not extended credit in ignorance of the fact of incorporation. See Hamilton, "The Corporate Entity," 49 Texas L. Review 979, 995 (November, 1971).

■ The liability imposed by Article 1302–2.02 is penal in nature and its scope should not be extended beyond the clear import of its language. See Schwab v. Schlumberger Well Surveying Corporation, 145 Tex. 379, 198 S.W.2d 79, 81 (1956); 18 C.J.S. Corporations § 612, pp. 1340–1341.

Our current Business Corporations Act sets forth the procedural requirements for incorporation in this State. The issuance of certificate of incorporation by the Secretary of State evidences that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under the Act. Vernon's Tex.Bus.Corp. Act Ann. Articles 3.03 and 3.04 (1955).

Article 1302–2.02, first enacted in 1887 was not repealed by the Business Corporations Act and has been carried forward into our current Miscellaneous Corporations Laws Act (Acts 1961, 57th Leg., p. 408, ch. 205, Sec. 1). According to one text writer, statutory requirements for filing published notices of intent to incorporate were quite common a century ago but have been abandoned in most states. Hornstein, Corporation Law and Practice, Sec. 101, p. 109 (1959 ed., 1968 pocket parts supplement).

■ While the corporate status of an entity may be ascertained by making inquiry to the office of the Secretary of State, our Business Corporations Act does not specify a means whereby persons who have relied upon a company's unincorporated status are notified of its incorporation. We believe the obvious purpose of the Legislature in enacting Article 1302–

2.02 was to insure continuing protection to persons who without knowledge of the incorporation, extend credit or otherwise change position on the belief that they are dealing with an unincorporated business. We do not believe, however, that the scope of the statute should be extended so as to impose individual liability, as a matter of law, where there is no evidence that the party seeking statutory protection was misled as to the corporate status of the party contracting the debt.

In Mytinger v. Waldrip, 290 S.W. 777 (Tex.Civ.App.—Ft. Worth 1926, writ dism'd), a provision of the Assumed Name Act of 1921, similar to that under consideration here, provided that a person doing business under an assumed name remained liable for all debts incurred in the operation of the business until he filed a certificate of withdrawal. Explaining the purpose of such provision, that court said:

"The Legislature by this provision evidently intended to protect those who extended credit to the business, relying upon the financial worth of one of its partners by giving them the right to hold the withdrawing individual liable for his failure to file a withdrawal certificate. We do not think the Legislature's intent was merely to impose an additional punishment upon such individual by making him liable for all claims and demands and causes of action, regardless of whether the failure to file a certificate induced or contributed to the liability or not."

Payne admits he never met or talked to Lucas and he testified he had never heard of Lucas prior to the transaction in question. The record reflects that Payne had a background of experience in investigation and there is no suggestion that he was in any manner misled as to the corporate status of the company. Payne had no prior dealings with the company, as distinguished from the circumstances in Ridgway and Hobbs, nor could he have been misled by any ostensible relationship between Lucas and the corporation, as was apparently the situation in Harris. Only by a determination that the statute imposed individual liability upon Lucas, as a matter of law, can the judgment of the trial court be affirmed.

■ Under the circumstances discussed, we believe Payne was under a duty to make reasonable inquiry to ascertain whether he was dealing with an individual or a corporation. In the absence of a showing that Payne acted in justifiable reliance upon a belief that Lucas was individually responsible for the corporate debt, there is no basis for imposing personal liability on Lucas. See Fletcher, Cyclopedia Corporations, Perm.Ed. Vol. 8, Sec. 4019, p. 403 and Sec. 4020, p. 405. Also Pure Oil Co. v. Walsh-Woldert Motor Co., 36 S.W.2d 802, 805 (Tex.Civ.App.—Texarkana 1931, writ dism'd). As in Mytinger we believe the statutory imposition of liability must be based upon the principle of estoppel and we find no factual basis in this case upon which an estoppel can rest. Stevens v. Lilley, 7 S.W.2d 883 (Tex.Civ.App.—Galveston 1928, no writ); Thompson v. Harmon, 207 S.W. 909 (Tex.App.1919); Hunt Oil Co. v. Killion, 299 S.W.2d 316 (Tex.Civ.App.—Texarkana 1957, writ ref. n. r. e.).

For the reasons stated, we grant appellees' cross-point. Since we have determined the trial court erred in entering judgment against appellees for the value of the typewriters and cases, we do not reach the question posed by appellant's point of error as to whether attorney's fees are recoverable under the provisions of Article 2226, Tex. Rev.Civ.Stat.Ann.

The judgment of the trial court is ordered reversed and judgment rendered that appellant take nothing.

## ON MOTION FOR REHEARING

On motion for rehearing, appellant argues that this court is without jurisdiction to consider appellees' cross-point because

**608**

appellee failed to except to the trial court's judgment, to give notice of appeal and to perfect an independent appeal to this court.

An appellee has the right to cross-assign errors without perfecting an independent appeal provided that he has properly apprised the trial court of his complaint or objection to the judgment. Rule 420, Texas Rules of Civil Procedure; Dallas Electric Supply Co. v. Branum Co., 143 Tex. 366, 185 S.W.2d 427 (1945); West Texas Utilities Co. v. Irvin, 161 Tex. 5, 336 S.W.2d 609 (1960).

Appellees filed motion for judgment non ·obstante veredicto in the trial court asking that all the jury findings be disregarded and in which motion they presented the same arguments which they have brought forward in their cross-point. The judgment recites that this motion was heard in open court and denied. We are of the opinion that the complaints presented in this motion were properly preserved for appellate consideration. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960). Appellant made no attempt to limit the scope of his appeal under Rule 353, T.R.C.P., and it was our duty to consider and pass upon appellees' cross-point. Brown v. Cox, 459 S.W.2d 471 (Tex.Civ.App.—Houston [14th] 1970, no writ).

The basic matter for determination by the trial court upon appellees' motion for judgment non obstante veredicto, and by this court on appellees' cross-point, was whether the statute in question imposed individual liability upon appellees as a matter of law. We are of the opinion that this question was sufficiently raised by appellees' cross-point. Rule 422, T.R.C.P.

We have considered all of the matters set forth in appellant's motion for rehearing and in its motion to strike appellees' cross-point and such motions are denied.