SIBONEY CORPORATION, Appellant,

v.

DRESSER INDUSTRIES, INC., Appellee.

No. 16459.

Court of Civil Appeals of Texas, Houston (1st Dist.).

March 27, 1975.

Rehearing Denied April 24, 1975.

Ellis F. Morris, Houston, for appellant.

Lapin, Totz & Mayer, Larry L. Huelbig, Houston, for appellee.

EVANS, Justice.

Dresser Industries, Inc. brought this suit against Siboney Corporation and Compression, Inc. to recover $11,615.68 for merchandise sold and delivered on account to Compression, Inc. Service of citation was not perfected on Compression, Inc. and it never became a party to the action. After jury trial, judgment was entered in Dresser's favor for the amount of its claim. We have determined that the trial court's judgment must be reversed and rendered.

In its judgment the trial court found, as a matter of law, that Siboney had failed to give statutory notice of incorporation as required by Article 1302–2.02, Texas Miscellaneous Corporations Act, Vernon's Ann.Civ.St., which provides as follows:

"A. Whenever any banking, mercantile or other business firm desires to become incorporated without a change of firm name, such firm shall, in addition

to the notice of dissolution required at Common Law, give notice of such intention to become incorporated for at least four (4) consecutive weeks in some newspaper published at the seat of State Government, and in the county in which such firm has its principal business office, if there be a newspaper in such county; and, if not, then in some newspaper published in some adjoining county; provided, however, that such notice shall only be published one (1) day in each week during the said four (4) weeks. Until such notice has been so published for the full period above-named, no change shall take place in the liability of such firm or the members thereof."

It is Dresser's contention that Compression, Inc. was incorporated as a subsidiary of Siboney, after Compression had been operated as a division of Siboney under the same name, and that this effected the incorporation of a business firm without a change in the firm name, requiring publication of notice under the above quoted statute. Dresser's position is that it extended credit on the belief that Compression, Inc. was a division of Siboney and that Siboney should be held legally responsible for the debts incurred by Compression, Inc. since the notices provided by the statute were not published.

Siboney, a holding company incorporated in the State of Maryland in 1955, acquired control of the assets of Compression, Inc. in June, 1969. This acquisition was effected under a detailed plan and agreement of reorganization which contemplated a merger, prior to the date of its closing, between Compression, Inc. and another Texas corporation, Compression Fabricators, Inc., with Compression, Inc. emerging as the surviving company. Under this plan, Siboney acquired the assets of Compression, Inc. and assumed its liabilities; in exchange, it distributed shares of its stock to Compression, Inc. It is not clear whether Compression, Inc. was subsequently dissolved although its dissolution was evidently contemplated by the plan.

After its acquisition by Siboney in June, 1969, Compression, Inc. was operated as a division of Siboney until November, 1969 when Siboney "caused to be formed a Texas corporation by the name of Compression, Inc." Thereafter Compression, Inc. was operated as a "distinct and separate corporate entity" and as the "wholly owned subsidiary" of Siboney. In March, 1971, Siboney, which then owned all of the issued and outstanding capital stock of Compression, Inc., sold its stock ownership to Modern Compression, Inc., another Texas corporation.

It was during the period of time that Compression, Inc. was operated as the wholly owned subsidiary of Siboney that the merchandise forming the basis for this suit was sold by Dresser to Compression, Inc. on open account. Dresser offered in evidence six invoices which it had sent to Compression in January and February, 1971 and one of these invoices dated February 17, 1971 is addressed as follows:

"COMPRESSION INCORPORATED
A DIV. OF SIBONEY CORP. DBA
LEWIS HERNANDEZ CO.
11036 OLD KATY ROAD
HOUSTON, TEXAS"

There was testimony indicating that these invoices were prepared by an employee of Dresser having personal knowledge of the facts and that its invoices were generally prepared upon the basis of information received from the customer and upon which it relied in extending credit. However, there was no evidence that Dresser ever transacted any business with Compression, Inc. prior to the dates indicated and the evidence is uncontroverted that during the period in which these transactions occurred, Compression, Inc. was operated as a separate and distinct corporate entity. The president of Siboney testified that during the period of time that Compression, Inc. was operated as a wholly

owned subsidiary of Siboney, the president of Compression, Inc. was responsible for its business and did not require or receive Siboney's authorization in making purchases and sales within the ordinary course of its business. He testified that Compression's president made general reports to Siboney on a monthly basis but that such reports did not list outstanding debts and that Siboney never guaranteed Compression's debts except with respect to certain obligations to banks made in connection with secured transactions. He said that all of these debts were subsequently discharged by Compression, Inc.

In Payne v. Lucas, 517 S.W.2d 602 (Tex.Civ.App.—Houston [1st] 1974), this court held that the scope of Article 1302–2.02 should not be extended to impose individual liability as a matter of law "where there is no evidence that the party seeking statutory protection was misled as to the corporate status of the party contracting the debt." The evidence in the case before us does not show that Dresser had any prior dealing with Compression, Inc. and there is no indication that at the time it furnished the merchandise in question to Compression, Inc., it was misled as to its incorporated status. We therefore can ascertain no ground for the imposition of statutory liability under Article 1302–2.02 and sustain Siboney's first five points of error.

In response to the first special issue submitted, the jury found that the transfers of assets by and between Compression, Inc. and Siboney during the years 1969, 1970 and 1971 were made with an intent to delay, hinder or defraud the past, present and future creditors of Compression. The trial court instructed the jury with respect to the provisions of Section 24.02 of the Texas Business & Commerce Code, V.T.C.A. (1968) in connection with this issue. Siboney's points attack the legal sufficiency of the evidence to support the jury finding on this issue.

The only transfer involving Compression, Inc. after November, 1969, when Compression was first operated as a wholly owned subsidiary of Siboney, was the sale by Siboney of its stock ownership in Compression, Inc. to Modern Compression, Inc. No impropriety is suggested with respect to that particular transaction. It is Dresser's contention that the series of corporate transactions outlined above evidence a single plan to hinder, delay or defraud creditors; however, Dresser does not point out the manner in which these transactions were intended to accomplish such result.

Where a subsidiary company is not operated as a bona fide separate entity but as a mere agency or instrumentality of the owning company, the courts will look beyond corporate form to determine the companies' true business relationship. Humble Oil & Refining Co. v. Railroad Commission of Texas, 133 Tex. 330, 128 S.W.2d 9, 12 (1939); Oriental Inv. Co. v. Barclay, 64 S.W. 80, 87 (Tex.Civ.App.1901, writ ref'd). Thus, where the evidence shows that an association between companies was merely a device to defraud creditors, the fiction of separate entities will be disregarded. Bond-Reed Hardware Co. v. Walsh, 193 S.W. 1148 (Tex.Civ.App.—San Antonio 1917, writ ref'd).

In the instant case we find no evidence that Compression, Inc. was incorporated or operated for any illegal, improper or fraudulent purpose. The uncontroverted evidence indicates that during the period of time that it was operated as a subsidiary of Siboney, each of the corporations had different officers and that Siboney exercised no control over Compression's routine business transactions. The fact that the stock of Compression, Inc. was owned and controlled by Siboney does not in itself afford a basis for holding Siboney responsible for debts individually contracted by Compression. Bell Oil & Gas Co. v. Allied Chemical Corp., 431 S.W.2d 336 (Tex.1968), 38 A.L.R.3rd 1102.

" 'The attempt to hold a parent corporation where the claim asserted is of contractual origin presents added difficulties. The very reasonable question must be met and answered why one who contracted with the subsidiary and received the promise which he bargained for but who has been disappointed in the fulfillment by the subsidiary of its commitment should then be allowed to look to the parent. As a matter of contract right it is evident he may not. Additional compelling facts must appear.' " Bell Oil & Gas Co. v. Allied Chemical Corp., supra, at p. 339, quoting Douglas and Shanks, "Insulation from Liability through Subsidiary Corporations", 39 Yale L.J. 193, 1. c. 210.

It does not appear from the evidence before us that credit was advanced by Dresser to Compression, Inc. due to any representation, statements or guarantees made by Siboney. We find none of the "additional compelling facts" which would justify imposition of liability upon Siboney for a contract it did not make. Bell Oil & Gas Co. v. Allied Chemical Corp., supra. We sustain Siboney's points of error 6 and 8.

We also sustain Siboney's point of error number 9 attacking the legal sufficiency of the evidence to support the jury's finding to special issue number 2 that Compression, Inc. had the apparent and ostensible authority to make purchases on behalf of Siboney. The evidence, considered in the light most favorable to Dresser's position, establishes only that someone in Dresser's offices prepared an invoice showing that Compression, Inc. was a division of Siboney and that this information generally came from the customer. There is no evidence that Siboney authorized or knowingly permitted anyone at Compression, Inc. to represent that it was still a division of Siboney or that anyone at Compression, Inc. actually made such a representation. In the absence of any evidence that the principal knowingly permitted the agent to hold himself out as having authority or that the principal by his conduct clothed the agent with the indicia of authority so as to lead a reasonably prudent person to believe he actually he had such authority, the finding of apparent authority cannot be sustained. Wewerka v. Lantron, 174 S.W.2d 630 (Tex.Civ.App.— Amarillo, 1943, writ ref'd).

In view of our holding on the above mentioned points of error, we do not reach for consideration Siboney's remaining points.

The judgment of the trial court is reversed and rendered.