Dennis STEIN d/b/a Speed & Sport
Warehouse, a/k/a Speed & Sport
Warehouse, Inc., Appellant,

v.

HOOKER INDUSTRIES, INC., d/b/a
Hooker Headers & Casler
Performance, Appellee.

No. 15564.

Court of Civil Appeals of Texas,
San Antonio.

Oct. 6, 1976.

Rehearing Denied Nov. 10, 1976.

Jay Sam Levey, Levey & Goldstein, San
Antonio, for appellant.

Geary, Stahl, Koons, Rohde & Spencer,
Stephen A. Brutsche, Dallas, for appellee.

KLINGEMAN, Justice.

This is a suit by Hooker Industries, Inc.,
dba Hooker Headers and Casler Perform-
ance Products, appellee herein, against Den-
nis Stein, dba Speed and Sport Warehouse,
aka Speed & Sport Warehouse, Inc.,[1] for
failure to pay for certain automobile acces-
sories and equipment furnished by appellee.
Trial was to a jury with a number of special
issues being submitted.[2] Both sides filed
motions for judgment. The trial court
granted appellee's motion and entered judg-
ment for appellee in the sum of $15,734.47
plus interest, attorney's fees, and costs of
the court. The court, in its judgment,
found that Stein had done business as a sole
proprietorship from approximately January
1971 to April 27, 1971, and that no statutory
notice was given to appellee by appellant of
the subsequent incorporation of his busi-
ness.

Article 1302–2.02, Tex.Rev.Civ.Stat.Ann.,
reads as follows:

Whenever any banking, mercantile or
other business firm desires to become in-
corporated without a change of firm
name, such firm shall, in addition to the
notice of dissolution required at Common
Law, give notice of such intention to be-
come incorporated for at least four (4)
consecutive weeks in some newspaper
published at the seat of State Govern-

---

1. The trial court granted an interlocutory sum-
mary judgment against Speed & Warehouse,
Inc. on January 30, 1975. Subsequently, Speed
& Sport Warehouse, Inc. filed for reorganiza-
tion under Chapter XI of the Federal Bankrupt-
cy Act, and the trial court severed appellee's
cause of action against Speed & Sport Ware-
house, Inc. from the cause.

2. The jury found, in answer to Special Issue
No. 1(a), that Stein was not acting for himself
only; (b) that he was acting for Speed & Sport
Warehouse, Inc. only. Because of the jury's
affirmative answer to subdivision (a), the only
other special issues answered pertain to attor-
ney's fees. Appellant has no points of error
pertaining to the award of attorney's fees.

ment, and in the county in which such firm has its principal business office, if there be a newspaper in such county; . . . provided, however, that such notice shall only be published one (1) day in each week during the said four (4) weeks. Until such notice has been so published for the full period above-named, no change shall take place in the liability of such firm or the members thereof.

Appellant's points of error may be summarized as follows: (1) The trial court erred in entering judgment for appellee because under the evidence and jury verdict, judgment should have been entered for appellant. (2) Appellant's failure to publish statutory notice of incorporation without change of firm name, as required by Article 1302–2.02, did not entitle appellee to judgment as a matter of law since there is substantial evidence that appellee had actual notice of such incorporation. (3) Since there was substantial evidence that appellee had actual knowledge of the incorporation of Speed & Sport Warehouse, Inc., a question of fact was presented and appellee waived the issue of estoppel by failing to request proper issues with reference thereto.

Appellee's suit is basically a suit on an open account, duly verified, with numerous invoices for the merchandise furnished attached to appellee's petition. Appellee predicates liability basically upon three grounds: (1) Appellee had contracted individually with appellant to pay for the goods in question. (2) Appellant had initially opened his business as a sole proprietorship and established his credit and relationship on that basis and thereafter incorporated without compliance with the statutory notice provisions of Article 1302–2.02. (3) Appellant had represented to appellee that his business was a sole proprietorship, and appellee had relied upon such representation

in furnishing the merchandise, and that appellant is estopped to assert the corporate entity as a defense to appellee's cause of action.

Dennis Stein filed a general denial and also a plea that the claim alleged, even if it were just and true as to the other appellant, in whole or in part, was not incurred by Dennis Stein, and that therefore, Dennis Stein is not indebted to appellee in any sum.[3]

Other pertinent facts may be summarized as follows: (1) Appellee introduced into evidence as an exhibit an application for credit made by Speed and Sport Warehouse to appellee which is dated February 18, 1971, signed by Stein, and which shows Stein as the owner of such business. (2) There was also introduced as evidence a certified copy of an assumed name certificate of Speed and Sport Warehouse, dated January 18, 1971, on file in the office of the County Clerk of Bexar County, Texas. This instrument contains a signature which is purportedly that of Dennis Stein, and lists him as the person conducting such business. It contains a statutory acknowledgment of Dennis Stein. Stein testified that the signature thereon was not his, but there is conflicting testimony by handwriting experts in this regard. (3) It is undisputed that the date of incorporation of Speed & Sport Warehouse, Inc. is April 27, 1971. (4) It is also undisputed that the amount of the debt is $15,734.47, but Stein asserts that this is not his debt, but rather the debt of the corporation.

There is a basic dispute between appellant and appellee as to whose burden it was to prove appellant's defense of actual notice and actual knowledge, with appellant asserting that it was appellee's burden to show absence of notice or knowledge. Appellee asserts that having proven noncompliance with the provisions of Article 1302–

---

3. Appellee argues that since Stein failed to file a sworn denial that he was doing business as "Speed and Sport Warehouse," under the provisions of Rule 93(o), Tex.R.Civ.P., he therefore has admitted such fact as a matter of law. Such rule provides that a pleading setting up

certain matters, unless the truth of such matters appear of record, shall be verified by affidavit including "(o) That a party plaintiff or defendant is not doing business under an assumed name or trade name as alleged."

2.02, it was appellant's burden to prove actual knowledge and notice of incorporation on the part of appellee and to secure fact findings to this effect.

There are a number of Texas cases construing the statute here involved. In *Hobbs v. Triangle Supply Company*, 378 S.W.2d 726 (Tex.Civ.App.—Eastland 1964, no writ), the plaintiff supplied materials to partners. The partners incorporated their business under the same name, but did not give the statutory notice of incorporation, and plaintiff continued to extend credit to the appellants as individuals and partners. The trial court granted an instructed verdict that appellants were individually liable since there had been no compliance with the statute. Appellants complained on appeal that there were fact questions on the issue of individual liability which should have gone to the jury. The Court of Civil Appeals, in affirming the trial court, stated:

> Appellants offered no proof and introduced no evidence showing publication of notice in a newspaper or to show that plaintiff had been notified or informed in any way of the corporation which they had organized prior to the time the material was furnished and the indebtedness here in question came into being. Actually the language of the statute requires publication of such notice in a newspaper as a prerequisite to a release of the firm members. In this state of the record we are unable to see that any issue of fact was presented to the individual liability of appellants.

In a later case, *American Smelting & Refining Company v. Ridgway*, 412 S.W.2d 675 (Tex.Civ.App.—Houston 1967, writ ref'd n. r. e.), appellant had sold merchandise to appellee as a sole proprietor. Appellee incorporated, using the same name, but failed to give statutory notice to appellant. The trial court held that appellant had notice that the business was a corporation at the time of the deliveries of the goods based on five checks sent to appellant printed with the "Inc." corporate name. The Court of Civil Appeals reversed and rendered judgment for appellant, stating:

It is our view that Article 1302–2.02 means exactly what it says. . . . Appellee contends that the only purpose of said article was to inform parties dealing with the firm of its incorporation and that since the checks sent to appellant after the incorporation gave notice that appellee had become a corporation, it was not necessary to comply with said article. There might be some merit in appellee's contention if appellant had actual or express knowledge of the incorporation, since in such event it might be presumed that it was intending to contract with and sell the goods in question to the corporation. But such was not the case. There was never any change in the course of dealing.

The Court continued:

> The checks did not convey actual knowledge or information to appellant of the incorporation of appellee, nor did they relieve appellee of the duty of publishing the statutory notice. Furthermore, it is our view that the mere receipt and deposit of the checks did not impose upon appellant the duty of making any inquiry.

In *Gay Harris and Son, Inc. v. E. H. Schlather & Sons*, 423 S.W.2d 467 (Tex.Civ. App.—Austin 1968, no writ), appellants had operated as a partnership and incorporated in 1961 without giving statutory notice. In 1964 appellants began buying from appellees, and appellees subsequently sued appellants individually for nonpayment of bills. Appellants contended that at the time of sale appellees knew the appellants had incorporated since "Inc." was used after the company's name on the supply truck and one of the checks given in payment had "Inc." on it. The Court said:

> We believe it is immaterial under the facts of this case whether Schlather was exposed to information that might lead to knowledge of the corporate existence. The marking on the truck and on one check did not convey actual knowledge or information to Schlather of the incorporation of appellants, and certainly did not relieve appellants of the duty to publish

statutory notice of their incorporation. . . .

The language of the statute clearly requires publication of notice of incorporation as a prerequisite to release of the firm members. There is no proof that appellants informed Schlather that the Harris firm was incorporated, and, as already observed, appellants did not publish notice in newspapers as required by statute. We find no issue of fact presented as to the individual liability of appellants.

Appellants rely heavily on *Siboney Corporation v. Dresser Industries, Inc.*, 521 S.W.2d 639 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.); *Payne v. Lucas*, 517 S.W.2d 602 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.). In both of these cases the issue involved was whether defendant, as a matter of law, was personally liable for debts of the corporation because of his failure to give the statutory notice of incorporation. In *Payne* the seller sued a former sole proprietorship to recover sums for typewriters sold to the corporation. Defendant had operated his business as a sole proprietorship for two years prior to his incorporation in July of 1967, but after the incorporation gave no statutory notice of such change. The business was sold by defendant on April 1969, and the typewriters were sold in June 1969, after the date of incorporation and after the business had been sold. Plaintiff had no previous dealings with defendant or the business and there was no evidence that credit was extended in the belief that defendant would be personally responsible for the corporate debt. The Court stated:

> We believe the obvious purpose of the Legislature in enacting Article 1302–2.02 was to insure continuing protection to persons who without knowledge of the incorporation, extend credit or otherwise change position on the belief that they are dealing with an unincorporated business. We do not believe, however, that the scope of the statute should be extended so as to impose individual liability, as a matter of law, where there is no evidence that the party seeking statutory protec-

tion was misled as to the corporate status of the party contracting the debt.

*Siboney* is a similar type of case where the buyer failed to give the statutory notice of incorporation. The trial court found that the buyer was liable as a matter of law. The Court of Civil Appeals reversed and stated:

> The evidence in the case before us does not show that Dresser had any prior dealing with Compression, Inc. and there is no indication that at the time it furnished the merchandise in question to Compression, Inc., it was misled as to its incorporated status. We therefore can ascertain no ground for the imposition of statutory liability under Article 1302–2.02 . . . .

These cases are clearly distinguishable from the case before us. We do not have a situation before us where there were no previous dealings between the seller and the buyer. There is ample evidence of such previous dealings as hereinbefore set forth.

Appellant argues that appellee knew or should have known that it was operating as a corporation at the time credit was extended, relying basically on evidence that a sign in front of appellant's warehouse read "Speed & Sport Warehouse, Inc." and that various checks and other written material were sent to appellee which contained the name, Speed & Sport Warehouse, Inc. Assuming that this is some evidence that appellee knew or should have known of the existence of the corporation, there is clearly evidence that it did not. There was introduced into evidence checks sent by appellant after the incorporation which were styled "Speed and Sport Warehouse," without the "Inc." on such checks, and there is evidence that it wasn't until about a year after the incorporation that checks were used by appellant which contained the "Inc." on them. The credit manager of appellee testified that Stein never told him that his business was incorporated or that he intended to incorporate; that he supplied and approved credit to Stein on the belief that he was dealing with an individual and was approving credit for Stein and

not a corporation. The sales manager for appellee testified that Stein never told him that his business was incorporated or that he had any intention of incorporating, and that he never knew he was dealing with a corporation. A credit supervisor for appellee testified that he relied on information given him in the credit application, which shows Stein as being a sole proprietorship; that he felt that Stein was buying goods as a sole proprietorship; and that no credit would have been extended to a corporation owned by Stein since they were relying on Stein's family background and finances.

Appellee made a prima facie case by introducing evidence of prior business dealings and extension of credit to the unincorporated business of the same name, and also introducing evidence, which is uncontradicted, that appellant did not give the statutory notice of incorporation, as required by Article 1302–2.02. It was then incumbent upon appellant to prove and secure fact findings in support of his defenses of "actual knowledge" or "actual notice." This he failed to do. While the evidence relied on by appellant may be some evidence of actual notice or actual knowledge, it is at best conflicting and disputed. There are no fact findings to support appellant's defense of actual notice or actual knowledge, and the implied findings of the trial court are to the contrary. There is ample evidence to support the trial court's implied finding that there was neither actual notice nor actual knowledge.

All of appellant's points of error have been considered and all are overruled. The judgment is affirmed.

CADENA, Justice, concurring.

I would affirm the judgment without suggesting that Article 1302–2.02 applies only where the creditor has previously engaged in business dealings with, or has previously extended credit to, the debtor.